EL UNIVERSAL, COMPANIA PERIODISTICA NACIONAL, S.A. de C.V., Appellant,

v.

PHOENICIAN IMPORTS, INC., d/b/a Azhar's Oriental Rugs, Appellee.

No. 13–89–383–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 6, 1990.

Rehearing Overruled Jan. 3, 1991.

M. Lloyd Seljos, McAllen, for appellant.

Juan B. Caballero, Keith C. Livesay, Ewers & Toothaker, Neil Norquest, McAllen, for appellee.

Before NYE, C.J., and SEERDEN and KEYS, JJ.

## OPINION

SEERDEN, Justice.

This breach of contract action arises from the failure of a Texas Corporation, Phoenician Imports, Inc. d/b/a Azhar's Oriental Rugs, (Phoenician) to pay a Mexican newspaper company, El Universal Compania Periodistica Nacional, S.A. de C.V., (El Universal) for advertising services rendered. The primary issues in this case are 1) whether a Texas court can enter a money judgment in a foreign currency; and 2) what date should be used for applying a rate of exchange for converting a foreign currency debt into United States dollars.

El Universal is a Mexican corporation that publishes a major newspaper in Mexico City, Mexico. Phoenician Imports is a Texas corporation doing business in McAllen, Texas. In 1984, Phoenician Imports entered into a contract with El Universal in Mexico City whereby El Universal was to publish newspaper advertisements for Phoenician in its newspaper in Mexico City. In 1986, the unpaid balance of Phoenician's account was 12,898,632 pesos. El Universal sued Phoenician in the District Court of Hidalgo County, seeking to recover the debt. The parties stipulated that the debt was due and owing, but disagreed on which date was to be used to convert the currency. Both sides moved for summary judgment in the trial court. El Universal asserted that the judgment in its favor should be entered in American dollars at the conversion rate effective on the date the debt became due and payable. Phoenician took

the position that the judgment should be entered in American dollars at the conversion rate on the date of the judgment. The trial court granted Phoenician's motion, denied El Universal's, and entered judgment in favor of El Universal in Mexican pesos at the rate of exchange which was in effect on the date of the judgment.

By its first point of error, El Universal asserts that the trial court erred in entering its judgment in pesos because neither party requested such action and because Texas law requires that the court enter its judgment in dollars.

■ Phoenician initially complains that El Universal has waived its right to complain of the trial court's judgment that was rendered in pesos. We note that neither party requested in their summary judgment motions that the judgment be rendered in this currency; both parties prayed that the judgment be rendered in dollars. Phoenician argues that Tex.R.App.P. 52 requires that the trial court be apprised in some manner of a party's dissatisfaction of the judgment entered, stating that "generally, such complaints are assigned as error in a motion for new trial." We reject this argument. El Universal was not required to file a motion for new trial to preserve its complaints; a motion for new trial is not a prerequisite for an appeal of a summary judgment proceeding. *Lee v. Braeburn Valley West Civic Ass'n*, 786 S.W.2d 262, 263 (Tex.1990); *see* Tex.R.Civ.P. 324; Accordingly, appellant's point of error is not waived and we will discuss its merits.

■ Most courts have presumed that foreign judgments must be made in United States currency.[1] *Baumlin & Ernst Ltd.*

*v. Gemini Ltd.*, 637 F.2d 238, 244 n. 9 (4th Cir.1980); *Shaw, Savill, Abion & Co., Ltd. v. The Fredricksburg* 189 F.2d 952, 955 (2d Cir.1951); *but see Competex S.A. v. Labow*, 783 F.2d 333, 337 (2d Cir.1986) (judgments in foreign currency may be permissible with repeal of section 20 of the Coinage Act of 1792, 31 U.S.C. § 371.). Our Texas Supreme Court has discussed this issue only once, in *Hogue v. Williamson*, 85 Tex. 553, 22 S.W. 580 (1897). In *Hogue*, the question was whether a written obligation to pay one thousand Mexican silver dollars, executed in Mexico, was a negotiable instrument; that is, whether the maker was obliged to pay a certain sum of money under the instrument or whether the instrument was an ordinary contract for the delivery of a commodity. The court stated that the instrument was a negotiable promissory note, regardless of the form of currency:

> [p]rovided that the note be for payment of money only, it is wholly immaterial in the currency or money of what country it may be payable. It may be payable in the money or currency of England or France or Spain or Holland or Italy or of any other country. It may be payable in coins, such as in pounds sterling, livres, turnoises, francs, florins, etc., for in all these and the like cases the sum of money to be paid is fixed by the par of exchange or the known denomination of the currency with reference to the par. ... '[t]his view of the case is not incompatible with a bill or note payable in money of a foreign denomination or any other denomination being negotiable, for it can be paid in our own coin of equivalent value ... A note payable in pounds,

1. Several courts have attributed this to the common law, probably based on concepts of sovereignty. *See* e.g., *Hicks v. Guiness*, 269 U.S. 71, 46 S.Ct. 46, 70 L.Ed. 168 (1925); *Liberty Nat'l Bank v. Burr*, 270 F. 251 (E.D.Pa.1921). This rule, however, has not been codified. Some courts have referred to § 20 of the Coinage Act of 1792, formerly found in 31 U.S.C. § 371, which states in relevant part "[t]he money of account of the United States shall be expressed in dollars or units, dimes or tenths, cents or hundredths ... and all accounts in the public offices and all proceedings in the courts shall be kept and had in conformity to this regulation."

*See e.g., Shaw, Savill, Albion & Co. Ltd. v. The Fredericksburg*, 189 F.2d 952, 954 (2d Cir.1951). Other courts have questioned whether the Coinage Act in fact prohibited entry of a judgment in foreign currency. *See Baumlin & Ernst, Ltd. v. Gemini, Ltd.*, 637 F.2d 238 (4th Cir.1980). In 1987, a New York statute authorized entry of judgments in foreign currency, if the underlying obligation was in that currency, to be converted into U.S. dollars at the rate of exchange prevailing on the date of entry of the judgment. N.Y. Laws 1987, ch. 326, amending N.Y. Judiciary Law § 27.

shillings, and pence, made in any country, is but another mode of expressing the amount in dollars and cents, and is so understood judicially. The course, therefore ... is to ... prove the value of the sum expressed in our own tenderable coin.'

*Id.* at 581. In light of this decision, then, we conclude that Texas courts, when faced with this issue, should use the dollar as the par of exchange of a foreign currency debt. To do so will facilitate the conversion process. Consequently, a foreign creditor seeking to recover a debt in Texas will be able to show the amount of the debt in the foreign currency, and will be able to use the dollar as the guide by which to convert the debt. We note, however, that any error in rendering judgment in pesos in the instant case was made harmless by the fact that the court set a conversion rate on the judgment. In so doing, it guided the parties concerning the amount the judgment in pesos was actually worth in dollars. This method has the same practical effect as using the dollar, so that any error in entering the judgment in pesos did not harm El Universal. Appellant's first point of error is overruled.

By its second and third points of error, El Universal contends that the trial court erred in entering judgment in favor of Phoenician and in denying its Motion for Summary Judgment because Texas law requires that a monetary currency exchange conversion in a judgment be made as of the date of the breach of the contract.

Two approaches have evolved with regard to this problem. Some courts have followed the "breach day" rule, which requires a court to enter judgment as of the date of the breach, using the exchange rate which was in effect on this date. The "judgment day" rule, on the other hand, requires a court to enter judgment using the rate of exchange in effect on the date of the judgment. A problem arises when the foreign currency is constantly fluctuating, either by its depreciation or its appreci-

ation. If, as in this case, the foreign currency is depreciating in value daily, the creditor is made to lose by an application of the "judgment day" rule because any judgment he recovers will be substantially less in value than the amount he was owed at the time of the breach.

Phoenician relies primarily on three cases to support its position that the amount of the judgment should be entered as of the date of the judgment rather than the date of the breach of the contract. The first two are United States Supreme Court cases, *Hicks v. Guinness*, 269 U.S. 71, 46 S.Ct. 46, 70 L.Ed. 168 (1925) and *Deutsche Bank v. Humphrey*, 272 U.S. 517, 47 S.Ct. 166, 71 L.Ed. 383 (1926). Both of these cases involve federal statutory law: suits brought in federal court under the Federal Trading with the Enemy Act to recover funds of German firms confiscated in the United States during the first World War. In *Hicks*, the Court held that when the underlying debt is payable in this country in the currency of a foreign country, the currency conversion date is the date of breach, i.e. the "breach day" rule. *Deutsche Bank*, decided one year later, held that where a debt is payable in a foreign country in foreign currency, the currency conversion should occur at the time of judgment, i.e. the "judgment day" rule.

Two approaches have emerged to reconcile *Hicks* and *Deutsche Bank*. Under the first approach, the judgment day rule applies when the contract is payable in a foreign country in that country's currency; the breach day rule applies when the payment is to be made in the United States. Under the second approach, the judgment day rule applies if the obligation arises entirely under foreign law; the breach day rule applies if the plaintiff could recover under United States law at the time of the breach. *In re Good Hope Chemical Corp.*, 747 F.2d 806, 811 (1st Cir.1984), *cert. denied*, 471 U.S. 1102, 105 S.Ct. 2328, 85 L.Ed.2d 845 (1985).[2]

---

**2.** Prior to *Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts distinguished between obligations that arose in

the United States, in which case the date of breach was used for conversion, (*Hicks*), and obligations that arose or were to be performed

■ Phoenician additionally relies on *Paris v. Central Chiclera S. de R.L.*, 193 F.2d 960 (5th Cir.1952), originally filed in a federal court of Texas, which applied the "judgment day" rule. It is noteworthy that the Court in that case made no mention of its duty to follow Texas substantive law under *Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Instead, the Court followed *Deutsche Bank*, which, as mentioned above, interpreted federal statutory law. We believe the outcome of this case rests on an interpretation of Texas law rather than *Hicks*, *Deutsche Bank*, and *Paris*.[3] While we realize that these cases are persuasive authority, because they do not involve Texas law and interpret federal statutory law, we find them distinguishable.

*Butler v. Merchant*, 27 S.W. 193 (Tex. Civ.App.1894, no writ), involved a note made in Mexico for one thousand Mexican dollars. The plaintiff wanted the note converted into dollars as of the date that the note was due. The Court entered judgment as of the date of breach, stating:

There was no error in allowing appellee the value of the Mexican money in money of the United States between the time when it became due and the institution of the suit. The value between those dates ranged from 69 cents to 92 cents, and the court allowed for 80 cents on the dollar. At the time of the trial it was worth only 66 cents, and appellants contend that this value is all that appellee should recover, but we do not think that appellee should be made to lose by the failure of appel-

lant to repay the money he owed at the proper time.

*Id.* at 193–94.

We believe that the holding in *Butler* is consistent with the Rest. 3rd, Restatement of Foreign Relations Law of United States, § 823(2) (1986), which provides in relevant part:

If, in a case arising out of a foreign currency obligation, the court gives judgment in dollars, the conversion from foreign currency to dollars is to be made at such rate as to make the creditor whole and to avoid rewarding a debtor who has delayed in carrying out the obligation.

■ The objective of civil money judgments is, in general, to place the judgment creditor (i.e. the injured party) in a position as close as possible to that in which he would have been if the obligation had been carried out by the judgment debtor or if the injury had not occurred. Restatement of Foreign Relations Law of United States § 823 comment c (1986). While the preference of the judgment creditor is to be taken into account, the decision is to be made by the court, which should assure that neither party receives a windfall or is penalized as a result of the currency conversion. *Id.* In general, if the foreign currency has depreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of the injury or the breach; if the foreign currency has appreciated since the injury or breach, judgment should be given at the rate of

---

in a foreign state, in which case the date of conversion was the date of the filing of the complaint. (*Deutsche Bank*). Following *Erie*, federal courts have usually applied state law. *Compania Engraw Comercial e Industrial, S.A. v. Schenley Distillers Corp.*, 181 F.2d 876 (9th Cir.1950); *Meinrath v. Singer Co.*, 87 F.R.D. 422 (S.D.N.Y.1980); *Vishipco Line v. Chase Manhattan Bank, N.A.(I)*, 660 F.2d 854 (2d Cir.1981), cert denied, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982); *Competex, S.A. v. LaBow*, 783 F.2d 333 (2d Cir.1986). *See* Restatement of Foreign Relations Law of the United States (1986) § 823, reporter's notes 2.

In general, courts have endeavored to select the rule that, in a given case, will prevent the loss due to fluctuation of exchange rates from being borne by the injured or non-breaching

party. In *Jamaica Nutrition Holdings, Ltd. v. United Shipping Co, Ltd.*, 643 F.2d 376 (5th Cir. 1981) the court applied the breach day rule to reach this result.

**3.** This question is one of state substantive law. *See Nikimiha Securities Ltd. v. Trend Group Ltd.*, 646 F.Supp. 1211, 1228 (E.D.Pa.1986). "The exchange rate for foreign currency will affect the amount of damages that the creditor can recover. Therefore, like prejudgment interest and exemplary damages, the decision whether or not to apply state law is outcome determinative.... The issue is substantive and state law applies." *Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 866 (2d Cir.1981), cert. denied, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982).

exchange applicable on the date of judgment or date of payment. *Id.* We believe that these principles should be followed to ensure the only just result: placing the injured party in the position in which he would be had the loss not occurred. In the instant case, the unfairness of the trial court's ruling can be demonstrated by showing the value of the loss on the date of the breach, $27,155.01, and the value of the loss on the date of the judgment, $5,114.03. El Universal should not have to bear this loss as a result of Phoenician's delay in payment. Accordingly, we hold that the trial court erred in entering judgment at the rate of currency exchange which was in effect as of the date of the judgment. El Universal's second and third points of error are sustained.

■ By its fourth point of error, appellant alleges that the trial court erred in entering a judgment that failed to specify the rate of interest earned on it, because Texas law requires that the rate of interest be specified. Phoenician responds by asserting that El Universal has failed to preserve error on this point by failing to make an objection to the form of the judgment. In support of this position, it relies on *Petroscience Corp. v. Diamond Geophysical,* 663 S.W.2d 68, 70 (Tex.Civ.App.— Houston [1st Dist.] 1983), *affirmed,* 684 S.W.2d 668 (Tex.1984), wherein the court held that a party failed to preserve error concerning the failure of the trial court to grant prejudgment interest. In that case, however, the complaining party did not make a request for recovery of interest. In the instant case, El Universal made a request for both prejudgment and postjudgment interest.

■ Postjudgment interest is a creation of statute to which appellant is entitled whether or not specifically awarded in the judgment. *Cranshaw v. Swenson,* 611 S.W.2d 886, 892 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). Phoenician concedes that if this Court determines that El Universal did not waive its right to assign error with respect to the failure to award postjudgment interest, we may correct or reform the judgment to award such inter-

est. *Cranshaw,* 611 S.W.2d at 892; Tex.R. App.P. 80(b)(2). We conclude that El Universal did not waive its right to complain of the error, and reform the judgment to include postjudgment interest. Accordingly, we reform the judgment in favor of El Universal to reflect that it recover the debt at the rate of exchange of the peso on the date of the breach, in the amount $27,-155.01, together with prejudgment interest at the rate of six percent from April 1, 1986 until the date of the judgment, attorney's fees of one-third of the claim, and postjudgment interest in accordance with Tex. Rev.Civ.Stat.Ann. art. 5069–1.05 § 2 and § 3(a), (b) (Vernon 1986).

The judgment of the trial court is RE-FORMED AND, AS REFORMED, IS AFFIRMED.