**STAFF INDUSTRIES, INC., Appellant,**

v.

**HALLMARK CONTRACTING, INC., Appellee.**

No. 13–91–437–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 14, 1993.

Rehearing Overruled Feb. 18, 1993.

Richard J. Hatch, Jr., Prichard, Peeler & Hatch, Corpus Christi, for appellant.

Curtis B. Dyer, Corpus Christi, Randal Patterson, Hollmann & Lyon, Inc., Odessa, for appellee.

Before NYE, C.J., and GILBERTO HINOJOSA and DORSEY, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Staff Industries, Inc., filed suit against Hallmark Contracting, Inc., for breach of a construction contract, and against King Construction Co. and United States Fidelity & Guaranty Co., for liability as principal and surety, respectively, under a Hardeman Act payment bond.[1] After a bench trial, the court rendered a take-nothing judgment against Staff on all of its causes of action, but also entered a declaratory judgment that Hallmark owed Staff $55,619.71. Staff brings five points of error. Hallmark brings one cross-point.

The primary issue in the present case is whether a contract for the production and installation of an indeterminate amount of material at a unit price entitled the subcontractor to be paid for the amount of materials provided to the job site or only that amount actually used in construction without regard to excess material discarded as waste.

Hallmark and King together undertook a construction project to build a fish hatchery for the Gulf Coast Conservation Association (GCCA), with King being awarded the contract and furnishing the performance and payment bond, issued by USF & G, and Hallmark acting in all other respects as the general contractor. Staff, a subcontractor in the present case, contracted with Hallmark to produce and install a material, Hypalon, which was used to line the ponds at the fish hatchery. Staff produced and delivered over a million square feet of Hypalon to the job site for installation in the ponds by another subcontractor, Midessa Industrial Vinyl Company, hired by Staff.

For the entire project Staff billed Hallmark a total of $598,001.11. Hallmark paid Staff only $498,496.66, claiming that the remaining amount due Staff was being held as retainage. The amount being retained and due Staff is the primary controversy in the present suit. Staff claims the balance of $99,504.45 of the amount it billed, which was based on the amount of Hypalon delivered to the job site. Hallmark claims that Staff is due only $53,119.71, based on the amount of Hypalon actually installed in the ponds without regard to the excess material trimmed off and discarded as waste.

After a bench trial, the trial court entered a judgment which ordered that both Staff and Hallmark take nothing by their claims, but purported to render a declaratory judgment that Hallmark owed Staff $53,119.71 plus 10% pre-judgment interest from May 11, 1989, and $2,500 plus 10% pre-judgment interest from May 10, 1990.

By its fifth point of error, Staff complains that the trial court erred in failing to award Staff a contract balance of $99,504.45, since the contract and the evidence showed as a matter of law or, alternatively, by the overwhelming weight of the evidence, that Staff was entitled to be paid based on material delivered to the job site, rather than on material actually installed in the ponds.

In considering a "no evidence," "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established tests set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

The present dispute involves a matter of contract interpretation. If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and

---

1. Tex.Prop.Code Ann. § 53.206 (Vernon 1984).

the court will construe the contract as a matter of law. A contract, however, is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of circumstances present when the contract was entered. When the contract contains an ambiguity, its interpretation becomes a question of fact based on the intention of the parties to it. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987); *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex.1983).

■■■ The intention of the parties is to be ascertained to the extent possible from the language of the contract itself, construed in connection with the circumstances surrounding the execution of the contract. *Sun Oil Co. (Del.) v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981); *Richard Gill Co. v. Jackson's Landing Owners' Association,* 758 S.W.2d 921, 925 (Tex.App.—Corpus Christi 1988, writ denied). These surrounding circumstances include what the particular industry considered to be the norm or reasonable and prudent at the time. *KMI Continental Offshore Production Co. v. ACF Petroleum Co.,* 746 S.W.2d 238, 241 (Tex.App.—Houston [1st Dist.] 1987, writ denied). In addition, the conduct of the parties which indicates the construction they themselves placed on the contract may be considered in determining the parties' true intent with regard to an ambiguous provision. *Consolidated Engineering Co. v. Southern Steel Co.,* 699 S.W.2d 188, 192–93 (Tex.1985); *Richard Gill Co.,* 758 S.W.2d at 925.

In the present case, the purchase order under which Staff supplied Hypalon to Hallmark specified in pertinent part as follows:

> For Furnishing all labor, materials, equipment, supervision, insurance, performance and payment bond, and appurtenances to complete the "Hypalon" Liner, all in strict accordance with the contract plans and specifications on the above mentioned project.
>
> * * * * * *
>
> As quoted $.5179 per square foot Not to exceed $610,061.00.

Hallmark contends that the provision for performance "in strict accordance with the contract plans and specifications" implies that the area specified in those plans and specifications to be covered with Hypalon is the amount for which Staff should be paid. Staff, however, points to a clause in the contract specifications concerning measurement and payment based on estimated quantities as follows:

> It is understood and agreed that the actual amount of work to be done and material to be furnished under this contract may differ somewhat from these estimates, and that where the basis for payment under this contract is the unit price method, payment shall be for the actual amount of such work done and the material furnished.

Staff contends that the provision of payment for "material furnished" conclusively shows its entitlement to be paid for the square footage of Hypalon delivered to the construction site.

■■■ However, we find the plans and specifications to be of no help in interpreting the present method of payment under the purchase order between Staff and Hallmark. The purchase order clause requiring that the Hypalon be furnished in accordance with the plans and specifications does not mean that the amount of Hypalon to be delivered to the site should exactly match the dimensions of the ponds without including any amount for contemplated overlap and waste—all parties agreed at trial that a certain amount of such waste was to be expected. Rather, the present controversy centers around the method of payment, which the purchase order fails to specifically address.

■■■ Nor does the clause relied upon by Staff aid it. That clause is in the specifications in the contract between Hallmark & GCCA. The payment contemplated by this clause is in connection with "this con-

tract"—specifically, the contract between GCCA and Hallmark as general contractor. Staff is not a party to that contract. The purchase order between Staff and Hallmark does not incorporate all aspects of the contract between GCCA and Hallmark, including the scheme for payment. The purchase order only requires that Hypalon be furnished in accordance with the contract specifications, that is, quality, quantity, etc.

■ Therefore, in the present case, the purchase order itself does not show whether payment is to be based on materials furnished or delivered to the job site or materials actually incorporated into the project. In addition, if we turn to the parties' expressed intent and the circumstances surrounding the purchase order, the evidence is conflicting concerning the proper method of payment.

The expressed intent of the parties regarding the method of payment was disputed at trial. While Fred Long, the district sales manager for Staff, contends that he had indicated to Red Hallmark, the principal of Hallmark, that payment would be based upon the unit price and the quantity of material shipped, Hallmark denies that he agreed to pay based on the amount of Hypalon furnished to the job site.

In addition, the conduct of the parties variously supports each of the two interpretations of the payment provisions of the purchase order. Long testified that the submittals, documents produced by Staff and indicating the quantity of materials to be produced and shipped, were periodically reviewed and approved by both the project engineer and Hallmark. These submittals represented the amount of materials delivered to the job site and for which Staff claims that payment is owed. Long testified that Hallmark initially paid Staff the amounts represented by the submittals and only refused to acknowledge the full amount of its debt according to the submittals at the conclusion of the project. On the contrary, however, Hallmark testified that Long had after completion of the project been shown and made no objections to

Hallmark's calculations of the amount due based on the square footage of Hypalon actually installed and not taking into account the excess amounts.

Finally, there was a dispute regarding the standard method of payment within the industry. Ruben Velasquez, president of Midessa, testified that, within the industry, payment for the "installation" of materials into a project includes all such materials placed in the project, even the excess that is later trimmed off. However, Hallmark testified that the industry standard is to pay based on "neat" calculations—the amount actually installed in the project—and for the supplier to make up for excess materials by adjusting its unit price.

The trial court as fact finder construed the purchase order in accordance with Hallmark's interpretation and by declaratory judgment determined Hallmark's debt to Staff based on Hallmark's calculations of the amount of Hypalon actually installed in the ponds. We hold that there was sufficient evidence of the parties' intent to support the trial court's interpretation. Staff's fifth point of error is overruled.

By its third point of error, Staff complains that the trial court erred in allowing Hallmark, King, and USF & G to amend their pleadings after trial to include a counterclaim against Staff for declaratory judgment concerning the actual amount due and owing to Staff.

■ The Declaratory Judgments Act[2] is not available to settle disputes currently pending before a court. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex.1990); *Texstar North America, Inc. v. Ladd Petroleum Corp.*, 809 S.W.2d 672, 678 (Tex.App.—Corpus Christi 1991, writ denied). Staff brought the present suit against Hallmark for the amount due and owing under the purchase order. The fact that the trial court found, in accordance with the evidence presented by Hallmark, that the actual amount due and owing was less than Staff contended, did not negate Staff's right to have judgment entered in its favor for that lesser amount. Thus, the

---

2. Tex.Civ.Prac. & Rem.Code Ann. § 37.001 *et seq.* (Vernon 1986).

request for declaratory judgment presented no issues beyond those already raised by Staff, nor did the declaratory judgment have greater ramifications than the original suit for the amount due and owing under the purchase order. *See BHP Petroleum Co.*, 800 S.W.2d at 841–42. Therefore, the trial court erred in allowing the counterclaim for declaratory relief and in entering the declaratory judgment in place of a judgment in favor of Staff for the true amount found to be due and owing from Hallmark. Staff's third point of error is sustained.

By its first point of error, Staff complains that the trial court erred by failing to award attorney's fees. Tex.Civ. Prac. & Rem.Code Ann. § 38.001(8) (Vernon 1986), allows recovery of reasonable attorney's fees, in addition to the amount of a valid claim and costs, if the claim is based upon an oral or written contract. *Lyons v. Montgomery*, 701 S.W.2d 641, 644 (Tex.1985); *Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.*, 794 S.W.2d 442, 449 (Tex.App.—Corpus Christi 1990, writ denied).

However, in order to recover such fees, the claimant must be represented by an attorney and present the claim to the opposing party, and payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented. Tex.Civ.Prac. & Rem.Code Ann. § 38.002 (Vernon 1986). *See Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex.1981); *Mendleski v. Silvertooth*, 798 S.W.2d 30, 32 (Tex.App.—Corpus Christi 1990, no writ).

In the present case, Staff was represented by an attorney. However, the present controversy centers around whether Staff properly presented its claim so as to be entitled to attorney's fees and whether Hallmark tendered payment so as to defeat such a claim for attorney's fees. Staff made presentment of its claim for $99,-524.45. Hallmark sent a check to Staff for the lesser amount of $53,119.71, but expressly made such payment conditional upon Staff's acceptance of the lesser amount, by noting on the back of the check, "Endorsement constitutes payment in full of PO *270–003* except for $2,500.00 retainage for vents."

We first address whether Staff's presentment of its claim for the higher amount supported its later claim for attorney's fees. Hallmark contends that Staff's claim for the higher amount which the trial court ultimately denied was excessive. A creditor who makes an excessive demand upon a debtor is not entitled to attorney's fees for subsequent litigation required to recover the debt. *Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex.1981); *Denta Rama, Inc. v. Lavastone Industries of Central Texas, Inc.*, 597 S.W.2d 507 (Tex. Civ.App.—Dallas 1980, no writ). However, absent some evidence of unreasonableness or bad faith, a demand is not excessive merely because it is greater than that which is later determined at trial to be due. *Findlay*, 611 S.W.2d at 58; *Essex Crane Rental Corp. v. Striland Construction Co.*, 753 S.W.2d 751, 758 (Tex.App.—Dallas 1988, writ denied). In the present case, although there was clearly a dispute concerning the correct method of payment under the terms of the purchase order, there was no evidence of unreasonableness or bad faith on the part of Staff in claiming the higher measure. We hold that Staff's claim was not excessive so as to deny it attorney's fees.

We now turn our attention to whether Hallmark made a proper tender as a defense to Staff's recovery of attorney's fees. Generally speaking, if a defendant tenders payment for the just amount owed and the plaintiff refuses to accept it and proceeds to trial, the defendant is not liable for the plaintiff's attorney fees. *Southwestern Bell Telephone Co. v. Vollmer*, 805 S.W.2d 825, 833 (Tex.App.—Corpus Christi 1991, writ denied).

However, for purposes of section 38.002, a "tender" must be an unconditional offer by the debtor to pay a sum not less than that due to the creditor. *Atlas Van Lines, Inc. v. Brookes*, 692 S.W.2d 123, 126 (Tex.App.—Amarillo 1985, no writ); *see also Baucum v. Great Ameri-*

can Insurance Co. of New York, 370 S.W.2d 863, 866 (Tex.1963). An attempted tender is without legal effect if it is accompanied by conditions which the debtor has no right to impose. C.F. Bean Corp. v. Rodriguez, 583 S.W.2d 900, 901 (Tex.Civ. App.—Corpus Christi 1979, no writ); Fields v. Texas Employers' Insurance Association, 565 S.W.2d 327, 331 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.). In Rodriguez, the losing defendant attempted to interrupt the running of post-judgment interest by offering to pay the amount of the judgment on condition that the plaintiff abandon his appeal. The plaintiff failed to accept the offer, but was ultimately unsuccessful in his attempt to increase the amount of the judgment on appeal. Nevertheless, we held that the defendant's offer was not a tender sufficient to interrupt the running of interest, because it was conditioned on settlement of the litigation. Rodriguez, 583 S.W.2d at 902; see also Commercial Union Insurance Co. v. La Villa Independent School District, 779 S.W.2d 102, 107 (Tex.App.—Corpus Christi 1989, no writ).

In the present case, had Hallmark made a truly unconditional tender of the amount for which the trial court ultimately found that it was liable, even though this amount was less than Staff demanded, it would have been sufficient to satisfy the defense of section 38.002 against attorney's fees. See Vollmer, 805 S.W.2d at 833. However, Hallmark's offer was conditional upon Staff relinquishing any claim for the higher amount and therefore was an offer to settle the dispute for the lesser amount. An offer to settle, however, is not equivalent to an unconditional tender of the amount offered in settlement. See La Villa; Rodriguez; Fields. Unlike an unconditional tender, an offer to settle for the lower amount would deprive the plaintiff of his right even to seek the higher amount. We hold that Hallmark failed to show an unconditional tender as a defense to Staff's claim for attorney's fees.

We hold that Staff was entitled to recover that amount of its attorney's fees that it proved to be reasonable and necessary. Hallmark does not dispute that Staff's attorney gave uncontroverted testimony that reasonable fees for trial of the case were $10,369.93, and of fees in the Court of Appeals of between $3,000 and $5,000, fees in connection with an application for writ of error to the Texas Supreme Court of between $2,000 and $3,000, and fees for argument to the Texas Supreme Court of $2,000. Such testimony was clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to cause suspicion. Staff is therefore entitled to recover its attorney's fees from Hallmark as a matter of law.[3] See Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex.1990). We sustain Staff's first point of error.

By a single cross-point, Hallmark complains that the trial court erred in awarding Staff prejudgment interest. Hallmark does not challenge the percentage amount of interest, but merely the right of Staff to recover any such interest after Hallmark properly tendered payment of the amount owed. As Hallmark argued in favor of the trial court's denial of attorney's fees in its response to Staff's first point of error, Hallmark here argues against the trial court's award of prejudgment interest to Staff, on the ground that its tender of the amount owed to Staff relieved it of liability for such interest.

Generally, a valid tender of the amount due will defeat a claim for interest on the obligation accruing after the tender. Arguelles v. Kaplan, 736 S.W.2d 782, 784 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); J.M. Hollis Construction Co. v. Paul Durham Co., 641 S.W.2d 354, 357 (Tex.App.—Corpus Christi 1982, no writ). However, as we stated in our analysis of Staff's first point of error, an attempted tender is without legal effect if it is accom-

---

**3.** Since we overrule Staff's second point of error and deny its right to recover on the bond against King and USF & G, see infra, we need not here determine whether Staff otherwise would have been entitled to attorney's fees under the Hardeman Act against these appellees as well.

panied by conditions which the debtor has no right to impose. *See La Villa*, 779 S.W.2d at 107; *Rodriguez*, 583 S.W.2d at 901; *Fields*, 565 S.W.2d at 331.[4] Therefore, we hold that Hallmark's conditional tender of payment as a settlement offer does not defeat Staff's claim for prejudgment interest on the amount due from Hallmark. We overrule Hallmark's cross-point of error.

By its second point of error, Staff complains that the trial court erred by failing to grant judgment against King and USF & G on Staff's Hardeman Act claims.

The Hardeman Act, Tex.Prop.Code Ann. § 53.201 *et seq.* (Vernon 1984 & Vernon Supp.1993), provides a procedure, by way of a bond furnished by the original contractor for the benefit of claimants, for the owner of a construction project to escape liability to subcontractors, laborers and materialmen who would otherwise have a claim against the owner for labor and materials and a lien against his property.

Specifically, Tex.Prop.Code Ann. § 53.202 (Vernon Supp.1993), provides that a Hardeman Act bond must:

(1) be in a penal sum at least equal to the total of the original contract amount;

(2) be in favor of the owner;

(3) have the written approval of the owner endorsed on it;

(4) be executed by:

(A) the original contractor as principal; and

(B) a corporate surety authorized and admitted to do business in this state and licensed by this state to execute bonds as surety; and

(5) be conditioned on prompt payment for all labor, subcontracts, materials, specially fabricated materials, and normal and usual extras not exceeding 15 percent of the contract price.

Tex.Prop.Code Ann. § 53.211 (Vernon Supp.1993), provides for attempted compliance with the Hardeman Act as follows:

(a) A bond shall be construed to comply with this subchapter, and the rights and remedies on the bond are enforceable in the same manner as on other bonds under this subchapter, if the bond:

(1) is furnished and filed in attempted compliance with this subchapter; or

(2) evidences by its terms intent to comply with this subchapter.

(b) Any provision in any payment bond furnished or filed in attempted compliance with this subchapter that expands or restricts the rights or liabilities provided under this chapter shall be disregarded and the provisions of this subchapter shall be read into that bond.

*See Sentry Insurance Co. v. Radcliff Materials of Texas, Inc.*, 687 S.W.2d 437, 440–41 (Tex.App.—Houston [14th Dist.] 1985, no writ).

■ However, if the bond was never *intended* to be a Hardeman Act bond, section 53.211 may not be used to modify the nonconforming bond into a Hardeman Act bond. *Sentry*, 687 S.W.2d at 441. The court has no authority to completely restructure such a bond so that it will comply with the Hardeman Act. *See Sherwin–Williams Co. v. American Indemnity Co.*,

---

**4.** We note that on claims for wrongful death, personal injury, and property damage, the legislature has specifically provided a statutory means of avoiding prejudgment interest when a settlement offer has been made by the defendant. Tex.Rev.Civ.Stat.Ann. art. 5069–1.05(6) (Vernon Supp.1993) provides in pertinent part with regard to prejudgment interest on such claims:

(b) If judgment for a claimant is less than the amount of a settlement offer by the defendant, prejudgment interest does not accrue on the amount of the judgment for the period during which the offer may be accepted.

(c) If judgment for a claimant is more than the amount of a settlement offer by the defen-

dant, prejudgment interest does not include prejudgment interest on the amount of the settlement offer for the period during which the offer may be accepted.

*But see Lyons v. Ayala*, 723 S.W.2d 254, 258 (Tex.App.—Fort Worth 1986, no writ) (pre–5069–1.05(6)(b) & (c) case requiring unconditional tender rather than offer to settle as a means of avoiding prejudgment interest). However, the statute is strictly limited to claims for wrongful death, personal injury, and property damage. *Crocker National Bank v. Ideco Division of Dresser Industries, Inc.*, 739 F.Supp. 338, 340–41 (S.D.Tex.1990).

504 S.W.2d 400, 403 (Tex.1973); *Sentry,* 687 S.W.2d at 441.

 In the present case, King as principal and USF & G as surety executed a payment bond in favor of Gulf Coast Conservation Association in the penal sum of $1,807,658.00, in reference to the general contract for construction of the ponds, and under the following conditions:

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall pay all claimants supplying labor and material to him or a subcontractor in the prosecution of the work provided for in said contract, then, this obligation shall be void; otherwise to remain in full force and effect;

PROVIDED, HOWEVER, that this bond is executed pursuant to the provisions of Article 5160 of the Revised Civil Statutes of Texas as amended and all liabilities on this bond shall be determined in accordance with the provisions of said Article to the same extent as if it were copied at length herein.

The bond is signed by agents of both King and USF & G, but not by GCCA.

The present payment bond by its own terms was executed pursuant to Tex.Rev. Civ.Stat.Ann. art. 5160 (Vernon 1987 & Vernon Supp.1993), otherwise known as the McGregor Act, which generally provides for mandatory performance and payment bonds to be furnished by the prime contractor in construction contracts in excess of $25,000 with a state or local governmental entity. However, since GCCA is not a governmental entity and thus a McGregor Act bond would have been inappropriate in the present case, Staff attempts to enforce the bond under the separate provisions of the Hardeman Act.

Although section 53.211 of the Hardeman Act allows for the enforcement of bonds executed in attempted compliance with that act, the statute still requires as a minimum that the bond have been executed in "attempted compliance" or with the "intent to comply" with the requirements of the Hardeman Act. *See Sentry,* 687 S.W.2d at 441. The specific intent of the present bond to comply with the terms of the McGregor Act is inconsistent with an attempt to comply with the Hardeman Act, since the two acts are separate and exclusive remedies created for separate and distinct circumstances; the McGregor Act contemplates a governmental entity as owner, while the Hardeman Act contemplates a private owner. In addition, each act provides a separate statutory cause of action on the respective type of bond. *See* Tex.Rev.Civ.Stat.Ann. art. 5160(B), (G) (Vernon Supp.1993) (McGregor Act); Tex. Prop.Code Ann. § 53.208 (Vernon 1984 & Vernon Supp.1993) (Hardeman Act).

Therefore, we hold that Staff is not entitled to enforce the present bond as a Hardeman Act bond. Moreover, there is no indication that Staff complied with the McGregor Act requirements as incorporated by the provisions of the bond itself. We overrule Staff's second point of error.

 By its fourth point of error, Staff complains that the trial court erred in failing to award post-judgment interest. Post-judgment interest is mandated by Tex. Rev.Civ.Stat.Ann. art. 5069–1.05, § 2 (Vernon Supp.1993), and is recoverable whether or not specifically awarded in the judgment. *El Universal, Compania Periodistica Nacional, S.A. de C.V. v. Phoenician Imports, Inc.,* 802 S.W.2d 799, 804 (Tex. App.—Corpus Christi 1990, writ denied); *Golden v. Murphy,* 611 S.W.2d 914, 916 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *Crenshaw v. Swenson,* 611 S.W.2d 886, 892 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.) (on rehearing). In the present case, Staff pleaded for, and is entitled to, post-judgment interest on the amount of monetary damages awarded to him, even if the judgment does not so recite. Accordingly, we may correct or reform the judgment to reflect an award of post-judgment interest. *El Universal,* 802 S.W.2d at 804; *Murphy,* 611 S.W.2d at 917; *Crenshaw,* 611 S.W.2d at 892. We sustain Staff's fourth point of error.

We REVERSE that portion of the judgment which orders that Staff take nothing on its claims against Hallmark, and we RENDER judgment that Staff recover the

amounts that the trial court's judgment declared Hallmark is contractually obligated to pay, including prejudgment interest. In addition, we here RENDER judgment against Hallmark and in favor of Staff on its claim for attorney's fees in the amount of $10,369.93 for trial of the case and $3,000 for appeal to this court, and conditional attorney's fees of $2,000 in connection with an application for writ of error and $2,000 for argument to the Texas Supreme Court. We further MODIFY the judgment to include an award of post-judgment interest in accordance with Tex.Rev. Civ.Stat.Ann. art. 5069–1.05, § 2 (Vernon Supp.1993). We AFFIRM the remainder of the trial court's judgment as so modified.