COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

FIRE & CASUALTY
INSURANCE                    )     

COMPANY OF
CONNECTICUT,                     )                    No. 
08-01-00277-CV

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                       191st District Court

                                                                              )

BUSLEASE, INC.,                                               )                   of Dallas County, Texas

                                                                              )

Appellee.                           )                      (TC# DV99-05308-J)

 

O
P I N I O N

 

Fire
& Casualty Insurance Company of Connecticut (F & C) appeals from a
judgment entered in favor of BusLease, Inc. (BusLease) following a jury trial.  We affirm.

FACTUAL SUMMARY

In
1995, Allstate Coaches, Inc. entered into a security agreement with MCI
Acceptance Corporation for the purchase of a motor coach.  Allstate assigned the Security Agreement to BusLease.  Pursuant
to the security agreement, Allstate was required to maintain casualty insurance
on the motor coach and BusLease was designated a loss
payee for any loss to the motor coach. 
Allstate purchased a business insurance policy with F & C providing
collision coverage for property damage to the motor coach.  








On
June 21, 1998, the motor coach sustained substantial property damage as the
result of a collision with a tractor trailer in Robstown, Texas.  A few days later, Allstate forwarded to F
& C an automobile loss notice and made a property damage claim.  By letter dated August 17, 1998, BusLease informed F & C that it retained all rights as
loss payee and expressed its understanding that any check made for repair would
be payable to BusLease and Allstate.  At about the same time, F & C
obtained an appraisal of the repair cost through an adjuster employed by its
policy administrator, GAB Robins.  The adjuster
estimated the repair cost at $67,368 subject to the final invoice cost of parts
from the Dina Bus Company in Mexico City.[1]  In October 1998, BusLease
contacted F & C to inquire about the claim but received no
information.  In November 1998, F
& C issued a check payable to both Allstate and BusLease
in the amount of $66,368 (estimated repair cost less deductible) and delivered
it to Allstate.  Allstate, however,
steadfastly refused to endorse the check or turn it over to BusLease.  For reasons unrelated to the accident,
Allstate also failed to pay the balance owed under the security agreement.  Accordingly, BusLease
repossessed the motor coach in December 1998. 
BusLease subsequently informed F & C in
December 1998 and again in February 1999 that it had repossessed the wrecked
motor coach and that Allstate had refused to endorse the check.  It demanded that F & C stop payment on
the prior check and reissue a check for $66,368 made payable solely to BusLease since Allstate was no longer entitled to the
insurance proceeds.  F & C did not
respond to this letter.  








During
the entire time it had corresponded with F & C about this matter, BusLease had not been provided with a copy of the estimate
obtained by F & C nor did its representatives understand that F & C
intended that the $66,368 check tendered to Allstate would be the entire
payment made for repairs.  In fact, BusLease=s
representatives believed that the check represented only a partial
payment.  In an effort to facilitate the
repair of the motor coach, BusLease obtained an
estimate for repairs in the amount of $130,496.32 from Blitz Bus & Truck in
Chicago, Illinois, and forwarded this estimate to F & C in June 1999.  F & C did not contact BusLease
to discuss this estimate.  Allstate later
signed a release authorizing F & C to make any payments under the policy
direct to BusLease. 
BusLease filed suit against F & C on July
13, 1999 for breach of the insurance policy. 
   In February 2000, F & C
hired an expert witness, Peter Paluzzi, and
instructed him to inspect the motor coach. 
Paluzzi determined the reasonable and
necessary cost to repair the motor coach to be $95,196.32.  Following Paluzzi=s inspection, F & C informed BusLease that it agreed with the earlier estimate provided
by Blitz with the exception of the estimated labor hours.  On February 28, 2000, F & C forwarded a
check in the amount of $66,368 payable solely to BusLease.  Three months later, it forwarded a second
check in the amount of $28,828.32, representing the difference between the
first check and the estimate provided by Paluzzi.  The actual cost to repair the vehicle was
$125,317, a difference of $30,120.68 between the amount tendered by F & C
and the actual cost of repairs.  

The
jury determined that F & C failed to comply with its agreement to timely
pay the reasonable and necessary cost of repairs to the motor coach.  It found that the reasonable and necessary
cost of repairs was $110,000, approximately $15,000 more than F & C
tendered and $15,000 less than the actual cost of repairs.  The jury also awarded BusLease
attorney=s fees in
the amount of $125,000 for preparation and trial, plus additional attorney=s fees in the event of appeal.  Finally, the jury found that BusLease=s
demand to F & C for payment of sums related to the cost to repair the motor
coach was not excessive at the time it was made.  The trial court entered judgment in
accordance with the jury=s
verdict.








SUFFICIENCY OF THE EVIDENCE

On
appeal, F & C does not challenge the jury=s
finding that it breached the insurance policy or the jury=s assessment of damages resulting from
the breach, nor does it challenge the reasonableness of the attorney=s fees awarded by the jury.  Instead, its argument is limited to the
sufficiency of the evidence supporting the jury=s
determination that BusLease did not make an excessive
demand.  In Issue One, F & C contends
that BusLease=s
demand for payment was excessive as a matter of law, and therefore, BusLease is not entitled to recover attorney=s fees. 
Alternatively, F & C argues in its second issue that the jury=s finding is against the great weight
and preponderance of the evidence.

Impact of Excessive Demand on Recovery of
Attorney=s
Fees

When
a party seeks to recover attorney=s
fees under Section 38.001(8) of the Civil Practice and Remedies Code, the
claimant is obligated to present the claim to the opposing party.  Tex.Civ.Prac.&Rem.Code Ann. ''
38.001(8), 38.002 (Vernon 1997).  If
payment is made within thirty days after presentment of the claim,
attorney=s fees
are not recoverable.  Tex.Civ.Prac.&Rem.Code Ann. '
38.002.  The purpose of this presentation
requirement is to allow the party against whom a claim has been asserted an
opportunity to pay a claim without incurring an obligation to pay the attorney=s fees of the claimant.  See France v. American Indem.
Co., 648 S.W.2d 283, 285-86 (Tex. 1983).  While no particular form of presentment is
required, France, 648 S.W.2d at 286, presentment is improper if the
claimant=s demand
is excessive.  Wayne
v. A.V.A. Vending, Inc., 52 S.W.3d 412, 418 (Tex.App.‑-Corpus
Christi 2001, pet. denied).  If
the claiming party makes an unreasonable demand, the other party should not be
forced to pay the demand or else risk suffering the claimant=s attorney=s
fees.  Id. 








In
considering whether a demand is excessive, the dollar amount is not by itself
indicative.  Id.  A demand is not excessive merely because it
is greater than what is later determined at trial to be due.  Aetna Casualty & Surety
v. Wild, 944 S.W.2d 37, 39 (Tex.App.‑-Amarillo
1997, writ denied); Pennington v. Gurkoff, 899 S.W.2d 767, 772 (Tex.App.‑‑Fort
Worth 1995, writ denied). 
The dispositive inquiry for determining
whether a demand is excessive is whether the claimant acted unreasonably or in
bad faith.  Wayne, 52 S.W.3d at
418; Staff Industries, Inc. v. Hallmark Contracting, Inc. , 846 S.W.2d 542, 548 (Tex.App.--Corpus Christi 1993, no writ).  F & C concedes that it had the burden at
trial to establish that BusLease=s demand was excessive.

Standard of Review -- Matter of Law

When
attacking the legal sufficiency of the evidence to support an adverse finding
on an issue for which it had the burden of proof, i.e., challenging the trial
court=s finding
as a matter of law, the appellant must demonstrate on appeal that the evidence
conclusively established all the vital facts in support of the issue.  Sterner v. Marathon Oil
Company, 767 S.W.2d 686, 690 (Tex. 1989); Elias v. Mr. Yamaha, Inc.,
33 S.W.3d 54, 59 (Tex.App.‑-El Paso 2000, no
pet.).  A party attempting to
overcome an adverse fact‑finding as a matter of law must surmount two
hurdles.  Sterner,
767 S.W.2d at 690; Elias, 33 S.W.3d at 59.  First, the record must be examined for
evidence that supports the finding, while ignoring all evidence to the
contrary.    Sterner,
767 S.W.2d at 690; Elias, 33 S.W.3d at 59.  Second, if there is no evidence to support
the finding, then the entire record must be examined to see if the contrary
proposition is established as a matter of law. 
Sterner, 767 S.W.2d at 690; Elias, 33
S.W.3d at 59.  Only if the contrary
position is conclusively established will the point of error be sustained.  Elias, 33 S.W.3d at
59. 








Application of the Law to the Facts

By
its demand and suit, BusLease sought to recover
$130,496.32 from F & C.  The jury
found that the reasonable and necessary cost of repair was $110,000.  This disparity between the amount demanded
and the amount awarded at trial does not, standing alone, establish an
excessive demand.  See Wild, 944 S.W.2d at 39.  Instead,
we must examine whether BusLease=s demand was unreasonable or made in
bad faith.

F
& C=s
argument that the demand is excessive is centered on evidence reflecting that
the original estimate included repair items amounting to $11,500 which were not
related to the accident in question.  F
& C makes much of admissions by BusLease at trial
that the original estimate had mistakenly included these amounts.  It also alleges that BusLease
did not ask Blitz for a breakdown of accident and non-accident related repairs
until approximately one year after it made demand and filed suit.  These arguments, of course, take into account
evidence that is contrary to the jury=s
finding and will not be considered in our review under the first prong of the Sterner analysis.








Limiting
our review to the evidence supporting the jury=s
finding, there is some evidence showing that BusLease
acted reasonably in relying on the Blitz estimate and forwarding it to F &
C.  Based upon its prior dealings with
Blitz and the company=s
good reputation, BusLease knew Blitz to be an expert
in the field of motor coach repair.  In
its cover letter to BusLease, Blitz characterized the
attachment as an Aestimate
for accident repairs.@  Under these circumstances, BusLease had no reason to believe that the estimate
included non-accident related repairs and it did not independently analyze each
item on the estimate before forwarding it to F & C.  Instead BusLease=s representatives relied on Blitz=s letter and the attached
estimate.  Further, BusLease=s representatives did not have any
expectation that the actual cost of repairs would correspond exactly to the
estimate.  After the actual repair cost
had been established, BusLease forwarded a revised
invoice to counsel for F & C.              Despite the erroneous inclusion of
the non-accident related repair items in the estimate and BusLease=s failure to detect the error earlier,
there is no evidence to show that BusLease acted in
bad faith or unreasonably by forwarding the Blitz estimate to F & C.  See Denta Rama, Inc. v. Lavastone Indus. of
Central Texas, Inc., 597 S.W.2d 507, 510 (Tex.Civ.App.--Dallas
1980, no writ)(where subcontractor=s
demand was too high because of mistaken belief regarding manner in which rock
veneer had been installed, but subcontractor corrected its mistakes at trial,
the demand was not excessive because there was no evidence of bad faith).  See also Staff Industries, 846 S.W.2d
at 548 (subcontractor=s
claim against general contractor for $99,524.45 was not excessive so as to deny
attorney=s fees to
subcontractor following recovery of $55,119.71, where there was no evidence of
unreasonableness or bad faith on part of subcontractor in claiming higher
measure).  Because there is some evidence
supporting the jury=s
determination that BusLease did not act unreasonably
or in bad faith in forwarding to F & C the initial estimate, F & C has
failed to clear the first hurdle on appeal. 
It is therefore unnecessary to proceed to the second part of the
analysis.  Issue One is overruled.

Standard of Review -- Against Great Weight and
Preponderance








In
Issue Two, F & C challenges the factual sufficiency of the evidence
supporting the excessive damages issue. 
When a party attacks the factual sufficiency of an adverse finding on an
issue upon which that party had the burden of proof, he or she must demonstrate
that the adverse finding is against the great weight and preponderance of the
evidence.  Dow
Chemical Company v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); Cruz v.
Paso Del Norte Health Foundation, 44 S.W.3d 622, 629 (Tex.App.‑-El
Paso 2001, pet. denied).  We
consider and weigh all of the evidence and set aside the verdict only if the
evidence is so weak or the finding is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust.  Dow Chemical, 46
S.W.3d at 242; Cruz, 44 S.W.3d at 629.

Application of the Law to the Facts

In
passing on this contention, we consider F & C=s
arguments regarding the erroneous inclusion in the estimate of the non-accident
related repair items and BusLease=s failure to independently review the
estimate prior to forwarding it to F & C. 
As we have detailed above, however, other evidence showed that BusLease acted reasonably in relying on the Blitz estimate
given its past dealings with the company and its good reputation in the
industry.  BusLease
had no notice until after it filed suit that the estimate included non-accident
related repairs and there is no evidence to show that it had knowledge of this
fact from some other source so that it could be said that BusLease
acted in bad faith or unreasonably in forwarding the estimate to F &
C.  Prior to the time it obtained the
estimate from Blitz and forwarded the estimate to F & C,  BusLease had
not been provided with a copy of the estimate performed by F & C=s adjuster.  Thus, it could not be said that BusLease was put on notice by the disparity in the two
estimates that it should conduct an independent review of the Blitz estimate
before forwarding it to F & C.  After
the motor coach had been repaired, BusLease forwarded
a revised invoice to counsel for F & C. 
We conclude that the jury=s
determination that BusLease  acted neither
unreasonably nor in bad faith in presenting its claim to F & C is supported
by factually sufficient evidence.  See
Denta Rama, 597 S.W.2d at 510. 
Issue Two is overruled.  Having
overruled Issues One and Two, we affirm the judgment of the trial court.

 








June 13, 2002

                                                                         


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 

(Do Not Publish)











[1]  The adjuster
noted that it was not possible to obtain parts prices from Dina absent an
actual order and cash advance.