Monica **SOURIGNAVONG** and John Sourignavong, **Individually and as Next Friend for Angelica Sourignavong, A Minor, Appellants,**

v.

**METHODIST HEALTHCARE SYSTEM OF SAN ANTONIO, LTD., d/b/a Women's & Children's Hospital, Appellee.**

No. 07–97–0270–CV.

Court of Appeals of Texas, Amarillo.

March 25, 1998.

Rehearing Overruled May 19, 1998.

Law Offices of Michael A. Wash, Michael M. Probus, Jr., Austin, for appellants.

Law Office of George J. Hanko, III, George J. Hanko, III, Austin, for appellee.

Before BOYD, C.J., and DODSON and REAVIS, JJ.

BOYD, Chief Justice.

This appeal grows out of a dispute between two attorneys about a division of attorney fees. The attorney fees stem from a personal injury claim Monica and John Sourignavong, individually and as next friends of Angelica Sourignavong (the Sourignavongs), made against the Methodist Healthcare System of San Antonio, Ltd., d/b/a Women's and Children's Hospital. From a judgment in favor of George J. Hanko (Hanko), Michael A. Wash (Wash) presents two issues which, he claims, demonstrate the trial court erred in its judgment. In presenting his issues, Wash asserts the trial court erred by denying him his assigned fee interest in the personal injury claim because 1) the evidence established his right to recover as a matter of law, and 2) the trial court findings supporting its decision are against the great weight and preponderance of the evidence. Disagreeing that the trial court erred, we affirm its judgment.

On March 22, 1996, the Sourignavongs signed a written contract employing "[t]he Law Office of George J. Hanko, III" and the "[L]aw Offices of Michael A. Wash," collectively referred to in the contract as "Attorney" to pursue their personal injury claim. In the agreement, the attorneys were assigned a 45 percent interest in any recovery after suit was filed plus any expenses incurred in the representation.[1]

It is undisputed that Wash provided office space and supplies for Hanko and advanced $3,271.64 in expenses. It is also undisputed that Wash never met with the Sourignavongs, never participated in discovery, never prepared or filed any documents in the cases, and never participated in any settlement negotiations. Wash did discuss the case with Hanko for approximately 30 minutes. Wash terminated his connection with Hanko in late October 1995. As a result of mediation, the Sourignavongs, Hanko and Methodist Hospital reached an agreement settling the Sourignavongs's claims for $27,000. The agreement also provided for a

reduction in attorney fees to one-third of the settlement amount.

Hanko filed a motion[2] in the suit reciting the above facts and showing that a referral fee of $3,000 had been paid to Spinks, the attorney who referred the case to Hanko. In the motion, Hanko asked the court to divide the remaining $6,000 in attorney fees between Hanko and Wash "in proportion to the amount of time each of them spent working on the case." On March 12, 1996, subsequent to the filing of Hanko's motion, Wash filed a plea in intervention in which he asserted his contractual right to reimbursement for expenses and the 45 percent contingent fee on "any recovery [p]laintiffs may make by settlement or judgment."

The underlying suit was heard on March 13, 1996. Hanko sought approval of the settlement agreement, including a reduction in attorney fees from 45 percent to one-third and division of the fees as requested in his motion. In his intervention, Wash sought an award of one-half of the 45 percent fee provided for in the contract. Each attorney testified in support of his position. Relevant portions of the testimony will be referred to as may be necessary to a proper discussion of the issues before us.

On March 21, 1997, the trial court rendered its judgment approving the settlement agreement. In the judgment, the court found that after funding an annuity for Angela Sourignavong, there remained $13,429.15. Of that amount, it directed Wash would be reimbursed $3,271.64 for expenses advanced. The remaining $10,157.51 was to be paid to Hanko, $9,000 of which was for attorney fees. The order does not recite the reason why the additional $1,157.51 was awarded. The order further directed that the entire $13,157.51 be deposited into the registry of the court pending its further order.

In response to Wash's request, the trial court entered findings of fact and conclusions of law. In its findings of fact, the trial court found Wash had agreed to a reduction in attorney fees to the one-third figure, that

---

1. The agreement also provided for a contingent fee of 50 percent after a notice of appeal or an appeal bond was filed or if it was necessary to retry the case.

2. Although the motion has no file mark on its face, it was apparently filed on March 10, 1996.

Hanko did all the legal work on the case and expended over 60 hours of time in doing so, and that Wash did no legal work on the case nor did he ever meet with, or talk to, the Sourignavongs. It also found that there was no agreement between Hanko and Wash regarding a division of the attorney fees. As a conclusion of law, the court determined that because there was no valid agreement between the attorneys regarding a division of the fees, they "should be awarded on a quantum meruit basis and in proportion to the time and effort each [attorney] spent working on this case." On that basis, the court awarded all the attorney fees to Hanko.

In support of his challenge, Wash initially argues that there was an express agreement between himself and Hanko "that the attorneys' fees in the case would be divided between the two firms." However, at the March 13 hearing there was a conflict between Wash's testimony and that of Hanko concerning how the fees should be divided.

■ It is a fundamental tenet of contract law that creation of a valid contract requires a meeting of the minds between the parties to the contract. *Williford Energy Co. v. Submergible Cable Services, Inc.*, 895 S.W.2d 379, 384 (Tex.App.—Amarillo 1994, no writ). In the instant proceeding, the trial court was the finder of fact and its determinations with regard to the credibility of the witnesses are entitled to the same deference given jury verdicts. *Medlin v. Medlin*, 830 S.W.2d 353, 354–55 (Tex.App.—Amarillo 1992, writ denied). Because of the conflicting testimony about the division of the fees, the trial court's conclusion that there was no meeting of the minds between the two as to a discussion of the fees and, therefore no valid division agreement, is binding upon us.

Wash advances two arguments in support of his contention that the trial court erred in applying the doctrine of *quantum meruit* in dividing the amount in controversy. He first cites cases applying the rule that a transfer of property to more than one grantee without stating their respective interests creates a presumption that each has an equal undivided interest in the property. He also asserts that the *quantum meruit* doctrine does not apply in instances where the parties have an express contract. Wash then reasons that there was an express contract between himself, the Sourignavongs, and Hanko which prevented the application of the *quantum meruit* doctrine.

■ Wash correctly observes that *quantum meruit* is an equitable remedy which is independent of, and does not arise from, a contract. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990). Classically, *quantum meruit* is a remedy based upon an implied promise to pay for beneficial services rendered and knowingly accepted. *Campbell v. Northwestern National Life Insurance Co.*, 573 S.W.2d 496, 498 (Tex.1978). In *Bashara v. Baptist Memorial Hospital System*, 685 S.W.2d 307, 310 (Tex.1985), the court explicated the elements of a *quantum meruit* claim:

1) valuable services rendered or materials furnished;

2) for the person to be charged;

3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him;

4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Id.* at 310. Because Hanko did not provide legal services or materials to Wash, strictly speaking, the *quantum meruit* doctrine is not applicable to the determination of the fee dispute between them. However, in the absence of an express agreement, in allocating the assets of a joint venture between its members, courts are empowered to apply the same equitable principles. *See, e.g., George P. Bane Inc. v. P.P. Prescott & Sons, Inc.*, 394 F.2d 119, 120 (5th Cir.1967).

■ The cases which Wash cites as standing for the presumption that property taken in the names of two parties creates equal ownership interests concern real estate interests rather than money due by virtue of a contract. Even so, it is noteworthy that even in the real estate context, the cases recognize the principle that the presumption is rebuttable, particularly in instances where it is shown the grantees did not furnish the con-

sideration equally. *Zephyr v. Zephyr*, 679 S.W.2d 553, 556 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Under this record, even assuming *arguendo*, the presumption applied, the evidence is amply sufficient to support a finding that Wash and Hanko did not furnish the consideration, *i.e.*, legal services in equal shares.

 In making his express contract argument, Wash misunderstood the effect of the contract between the Sourignavongs, Wash, and Hanko. While the contract did expressly provide for the payment of attorney's fees to Wash and Hanko, it did not in any way address how any fee due should be divided between the two attorneys. Thus, the trial court did not err in applying equitable principles in making its decision.

For the same reasons, Wash's argument that "the assigned interest transferred to the attorneys may not later be increased or decreased if the work actually performed under the contract is more or less than expected" is not relevant to our decision. By his letter to Hanko's attorney concerning the reduction in attorneys' fees from 45 percent to one third, Wash did not challenge the reduction but, rather, asserted that he had a half interest in the fees. The reduction was not made because of, nor was it related to, the amount of work actually performed by either attorney. Thus, it was not until the trial court made its decision concerning the division of attorney fees that it took into consideration the amount of work performed in accomplishing the settlement.

 Likewise, Wash's challenge to the legal sufficiency of the evidence to support the trial court's finding that he did no attorney work is without merit. As support for his legal sufficiency argument, Wash relies upon the evidence that he furnished Hanko office space, utilities, supplies, and case expenses. The intuitive conclusion that that type of service may not be considered as attorney work is supported by Section 81.101 of the Government Code. That section provides:

(a) In this chapter the "practice of law" means the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined.

Tex. Govt.Code Ann. § 81.101(a) (Vernon 1988). Although the section itself deals with the unauthorized practice of law, the definition is appropriate and applicable here. It is clear from this definition that in this case, merely providing office space, utilities, supplies, and case expenses are not within the purview of the definition delineating "the practice of law."

We hold the record sufficiently supports the trial court's determination of the relative interests of Wash and Hanko in the attorney's fees. Accordingly, no reversible error is shown and we overrule Wash's issues.

The judgment of the trial court is affirmed.