# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00559-CV

**Rainbow Group, Ltd. and Alan Sager/Josephine Johnson; Joanne Barker; Elizabeth Gonzalez; Ramiro Estrada; Cheryl Hiltner; Emily Hebert; Ava Lott; Jennifer Washington; Amy Spilecke; Seantel Cockle; Tammy Peterson; Lisa Small; and Julie Vargas, Appellants**

**v.**

**Josephine Johnson; Jennifer Washington; and Seantel Cockle/Rainbow Group, Ltd. and Alan Sager, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. 92-02221, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

A district court rendered judgment for appellees, Josephine Johnson and other current and former hairstylists (collectively the Ahairstylists@), on their *quantum meruit* claim against Rainbow Group, Ltd. (ARainbow Group@), which owns and operates a chain of hair care salons under the name ASupercuts,@ and Alan Sager, general partner of the Rainbow Group (collectively ASupercuts@). Supercuts now appeals the district court=s judgment. As cross-appellants, the hairstylists advance two issues, arguing that (1) Supercuts=s actions constitute a breach of contract and (2) the hairstylists are entitled to additional post-judgment interest. We will reverse the judgment in part as it pertains to the hairstylists= attorney=s fees and remand that issue to the trial court for further proceedings. We will reform the judgment to reflect the award of post-judgment interest and, as reformed, affirm the remainder of the judgment.

# BACKGROUND

In 1991, certain Supercuts hairstylists filed suit against their employer Supercuts in federal court for unpaid and overtime wages, complaining that they were not paid the federal minimum wage under the Fair Labor Standards Act (AFLSA@), 29 U.S.C. '' 201-219 (1988), for all hours of work they performed. Subsequently, the hairstylists voluntarily dismissed the case.

In 1992, hairstylists Josephine Johnson, Jennifer Casey, Seantel Wilmes, and Ava Lott filed suit in state district court on behalf of themselves and all other individuals employed by Supercuts as hairstylists during the previous four years. The hairstylists requested certification as a class and alleged that they had entered into oral employment contracts with Supercuts providing payment at a fixed hourly rate, and that Supercuts had breached the contracts by refusing to pay the stylists for time spent at the hair salons Aoff the clock@ and attending mandatory meetings. The district court granted the hairstylists= motion for class certification, which Supercuts appealed. The hairstylists subsequently filed an amended petition alleging claims incorporating FLSA, complaining that they were not paid the federal minimum wage for all hours during which they were required to be at work. On the basis of their amended petition, Supercuts removed the case to federal district court. The hairstylists filed a motion to remand, which was denied.

The federal district court conducted a bench trial on the merits and found that the hairstylists failed to establish that Supercuts breached employment contracts with the hairstylists. The hairstylists appealed this finding and the denial of their motion to remand to the Fifth Circuit, which determined that the federal district court lacked subject matter jurisdiction because the hairstylists had pleaded an independent state contract claim. The Fifth Circuit vacated the federal district court=s judgment and remanded the case

to that court with instructions to remand the case to state district court. *See Casey v. Rainbow Group, Ltd.*, 109 F.3d 765 (5th Cir. 1997) (opinion not published).

After remand to state court, Supercuts resumed its appeal of the district court=s certification of the class. This Court affirmed the certification. *See Rainbow Group, Ltd. v. Johnson*, 990 S.W.2d 351, 361 (Tex. App.CAustin 1999, pet. dism=d w.o.j.). In an agreed order, the district court thereafter bifurcated the trial proceedings, separating the individual liability issues of non-testifying class members from the individual liability issues of those thirteen class members who testified live or by deposition and any issue common to the class.

The hairstylists then filed a second amended petition, adding a *quantum meruit* claim. The district court conducted a bench trial on the merits and consequently rendered judgment for the thirteen hairstylists who testified, concluding that A[p]laintiffs have established all of the requirements for recovery in *quantum meruit* for the time they sat off the clock and attended mandatory shop and product knowledge meetings.@ The district court also granted the thirteen hairstylists pre-judgment interest and attorney=s fees, and severed the claims of the remaining class members for subsequent consideration. By eight issues, Supercuts appeals the district court=s final judgment; the hairstylists assert two complaints on appeal.

## DISCUSSION

### *Class Treatment of Quantum Meruit Claim*

The district court determined that the present action should proceed as a class action pursuant to Texas Rule of Civil Procedure 42(b)(4) based on the court=s conclusion that Acommon questions of fact and law regarding the terms of the employment contract under which plaintiffs and the class

**3**

were employed, defendants= obligations thereunder, and the breach of contract predominate over any questions affecting only individual members of the class.@ *See* Tex. R. Civ. P. 42(b)(4).[1] When the hairstylists later amended their petition by adding *quantum meruit* as an alternative theory of recovery, the original certification order was not subsequently revised. By its first issue, Supercuts argues that the district court erred in granting class relief on the basis of *quantum meruit* because the hairstylists=*quantum meruit* claim is individual to each stylist and not subject to class treatment. Because the class was originally certified based on a contract daim, Supercuts argues that other forms of relief, including relief under *quantum meruit*, were precluded absent a modification of the class certification order.

Although Supercuts argues on appeal that the class certification should have been reconsidered after the hairstylists amended their petition, the trial court apparently did not, and Supercuts never raised the matter in the trial court. Instead, the cause proceeded to trial on the hairstylists= last live pleading. In accordance with their agreed order, thirteen individual hairstylists testified live or by deposition, and in effect their claims were tried by consent.

Despite the parties= conflicting arguments on this issue, we fail to see the significance. Assuming only the breach of contract claim was the subject of the class action, that claim was properly tried, and the hairstylists did not prevail on that issue. However the cause proceeded, the record does not

---

[1] Rule 42 is based on its federal counterpart, Federal Rule of Civil Procedure 23; consequently, federal decisions and authorities interpreting federal class action requirements are persuasive authority. *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000).

**4**

reflect that the trial court adjudicated any *quantum meruit* class claims.  By agreed order, all individual claimants who testified live or by deposition could have their claims determined in the trial below.  These thirteen recovered only on their individual *quantum meruit* claims, and the court awarded each of the thirteen hairstylists only individual relief.  Despite the extensive findings of fact, the trial court did not determine any class issues, and the judgment does not establish Supercuts= liability as to the *quantum meruit* claims of a class or any unnamed class members.  The amended judgment states, AThis judgment is entered on the issue of Defendants= liability to the above named Plaintiffs and Plaintiff class members only@ and severs the claims of the remaining class members.  Liability and damages, if any, as to any unnamed hairstylists remains to be determined in the severed cause.  We therefore do not decide any issues relating to the alleged *quantum meruit* class.  We accordingly overrule Supercuts=s first issue.

### *Quantum Meruit*

In its first conclusion of law, the district court determined that the hairstylists Aestablished all of the requirements for recovery in *quantum meruit* for the time they sat off the clock and attended mandatory shop and product knowledge meetings.@  By its second issue, Supercuts argues there was no evidence or insufficient evidence to support a finding of *quantum meruit*.  We review the district court=s conclusions of law *de novo*, as legal questions.  *Piazza v. City of Granger*, 909 S.W.2d 529, 532 (Tex. App.CAustin 1995, no writ).  Conclusions of law will not be reversed unless they are erroneous as a matter of law and will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence.  *Westech Eng=g, Inc.*, 835 S.W.2d at 196.

**5**

*Quantum meruit* is an equitable theory of recovery based on an implied agreement to pay for benefits received. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The right of recovery is independent of any contract. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). The theory is instead based on an implied promise to pay for beneficial services rendered and knowingly accepted. *Campbell v. Northwestern Nat=l Life Ins. Co.*, 573 S.W.2d 496, 498 (Tex. 1978). To establish a claim for *quantum meruit*, plaintiffs must show (1) they rendered valuable services to the individual sought to be charged, (2) who accepted the services and materials to his benefit, (3) under such circumstances that he would reasonably know that the plaintiffs expected to be paid for the services. *Sourignavong v. Methodist Healthcare Sys. of San Antonio, Ltd.*, 977 S.W.2d 382, 385 (Tex. App.CAmarillo 1998, pet. denied) (citing *Bashara v. Baptist Mem=l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985)).

Evidence in the record supports the conclusion that, by sitting off the clock but nonetheless remaining at store locations, the hairstylists conferred a benefit upon Supercuts by being ready to serve customers when they arrived at the store. Susan Bird, director of accounting and general manager of the Rainbow Group, testified that it was Acritical@ to have stylists ready Ato jump on a customer and cut his hair when he comes in the door.@ Furthermore, evidence indicates that Supercuts received a benefit by having the hairstylists attend store meetings and product knowledge meetings. Bird testified that at such meetings, stylists and managers would discuss scheduling and productivity issues, set goals, and engage in general planning. Ava Lott testified that during certain meetings, representatives would Ago over products and they would tell us what the product was and how to sell the product.@ One can reasonably infer from such

**6**

testimony that requiring stylists to attend these meetings benefitted Supercuts by improving store efficiency and productivity. The hairstylists produced sufficient evidence that they rendered valuable services to Supercuts and have thus satisfied the first element of a *quantum meruit* claim. *See Sourignavong*, 977 S.W.2d at 385.

A *quantum meruit* claim also requires sufficient evidence that Supercuts accepted, to their benefit, the hairstylists=services. *See id*. Evidence in the record indicates that the hairstylists were required to be at their particular store, ready to work, during scheduled hours. Such evidence supports the conclusion that Supercuts not only accepted, but required, these services from the hairstylists.

Finally, the hairstylists must show that they rendered services to Supercuts under such circumstances as reasonably notified Supercuts that the hairstylists expected to be paid for their services. *See id*. The record contains evidence that stylists repeatedly complained that they should be allowed to clock-in; Supercuts was thus on notice that workers believed they should be paid and wanted to be paid for the time they were required to be at work locations. In sum, the hairstylists produced sufficient evidence to support a finding of *quantum meruit*. Because the district court=s conclusion that the hairstylists established all of the requirements for recovery in *quantum meruit* rests upon sufficient evidence produced, we overrule Supercuts=s second issue.

### *Statute of Limitations*

By its third issue, Supercuts argues that the trial court erred in failing to find that the hairstylists= *quantum meruit* claim was barred by the statute of limitations. A suit to recover on *quantum meruit* for labor and materials furnished is a species of a suit for debt. *Mann v. Jack Roach Bissonnet,*

**7**

*Inc.*, 623 S.W.2d 716, 718 (Tex. Civ. App.CHouston [1st Dist.] 1981, no writ). The statute of limitations for such an action is four years. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 16.004 (West Supp. 2002). Supercuts only asserted below that the claims were barred by the two- year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 16.003 (West Supp. 2002). It reurges that position on appeal. Supercuts further argues that the hairstylists=claim is barred, even applying the four-year period of limitations, because the stylists seek recovery for activities occurring between February 1988 and July 1993, but did not allege their *quantum meruit* claim in their amended petition until more than four years later. Because the claims are not barred by the two-year statute and Supercuts did not assert the four year statute of limitations as an affirmative defense, the trial court did not err in failing to rule in its favor.

The hairstylists filed their original petition on February 20, 1992. On August 31, 1999, the hairstylists filed their second amended original petition, adding a claim for *quantum meruit* based on the same alleged failure by Supercuts to pay for all hours the hairstylists were required to be at work. Although the hairstylists= *quantum meruit* claim was filed more than four years after February 1988, the hairstylists= initial claim for breach of contract was filed within the applicable four-year limitations period.

Section 16.068 of the Texas Civil Practice and Remedies Code provides that if a filed pleading relates to a cause of action that is not subject to a plea of limitation when it is filed, a subsequent amendment that changes the facts or grounds of liability is not subject to a plea of limitation unless the amendment is wholly based on a new, distinct, or different transaction or occurrence. *Id*. ' 16.068 (West 1997). Because the applicable limitations period did not bar the hairstylists=contract claim in their original petition, and because the hairstylists= later *quantum meruit* claim is based on the same transactions or

**8**

occurrences as their initial claim, the hairstylists= second amended original petition related back to the original petition and the hairstylists=*quantum meruit* claim was not barred by limitations. *See Tanglewood Terrace, Ltd. v. City of Texarkana*, 996 S.W.2d 330, 342-43 (Tex. App.CTexarkana 1999, no pet.). We overrule Supercuts=s third issue.

### *Damages*

By its fourth issue, Supercuts argues that the district court erred in awarding damages because there is no evidence or insufficient evidence to support an award of damages. At trial, the stylists produced no records detailing the exact amount of time each hairstylist was kept off the clock. Consequently, the hairstylists testified to the best of their knowledge concerning the amount of time each was held off the clock. On cross examination, some stylists admitted that their testimony was based on their best estimates or guesses. This, however, does not preclude the hairstylists from recovering damages. If injured plaintiffs have produced the best evidence available, and if it is sufficient to afford a reasonable basis for estimating their losses, they are not to be denied recovery because the exact amount of the damage is incapable of ascertainment. *Gulf Coast Inv. Corp. v. Rothman*, 506 S.W.2d 856, 858 (Tex. 1974) (citing *Hindman v. Texas Lime Co.*, 305 S.W.2d 947, 953 (Tex. 1957)). Because the hairstylists= testimony constituted the best available evidence from which to ascertain their damages, the district court did not err in awarding damages based on such testimony.

Supercuts also argues that the hairstylists= testimony was insufficient because such evidence conflicts with business records Supercuts maintained calculating the amount of time stylists were kept off the clock. In a nonjury trial, the district court is the sole judge of the credibility of the witnesses and the weight

**9**

to be given their testimony.  *Griffin Indus., Inc. v. The Honorable Thirteenth Court of Appeals*, 934 S.W.2d 349, 355 (Tex. 1996).  Acting as the fact-finder, the district court sits in the exclusive position to observe the witnesses and to evaluate their testimony and credibility.  *Id*.  The reviewing court cannot second guess the district court or substitute its judgment for that of the fact finder, even if there is conflicting evidence that would support a different conclusion.  *Id*.  We must give deference to the district court=s determination of damages to the extent that it involved an evaluation of the credibility and demeanor of the various witnesses.  We cannot say the court erred in awarding damages based on the testimony presented by the hairstylists rather than Supercuts.

Supercuts also argues that the district court erred in awarding damages because the hairstylists failed to mitigate their damages or present any evidence that they attempted to do so.  The burden of proving failure to mitigate is on the defendant, who must also show the amount by which the plaintiffs= damages were increased by the failure to mitigate.  *Texas Dep=t of Human Servs. v. Green*, 855 S.W.2d 136, 151 (Tex. App.CAustin 1993, writ denied).  Supercuts, however, does not direct us to any evidence proving that the hairstylists failed to mitigate their damages.  Further, Supercuts failed to request that the district court make an affirmative finding regarding mitigation of damages.  Supercuts has thus not satisfied its burden of proving that the hairstylists failed to mitigate damages.  *See MBank Abilene, N.A. v. Westwood Energy, Inc.*, 723 S.W.2d 246, 253 (Tex. App.CEastland 1986, no writ).

Supercuts next argues that the hairstylists failed to present sufficient evidence showing the value of the Aservices@ rendered by the hairstylists during the time they were in the store.  A claim in *quantum meruit* seeks to recover the value of the services rendered or materials furnished.  *Air*

*Conditioning, Inc. v. L.E. Travis & Sons, Inc.*, 578 S.W.2d 554, 556 (Tex. Civ. App.C Austin 1979, no writ). A judgment predicated upon *quantum meruit* must be supported by evidence of the reasonable value of labor or services performed and materials furnished. *Id*. Here, the hairstylists rendered value by being at the store ready to cut hair. The value placed on these services was manifested in the hourly rate paid to the stylists while on the clock. The district court did not err by adopting such value in calculating *quantum meruit* damages.

In its eighteenth conclusion of law, the district court determined that the hairstylists= Aemployment was subject to the provisions of the Fair Labor Standards Act@ and that Supercuts Ahad an obligation to keep accurate records of all of [the hairstylists=] hours of work.@ The court next concluded that because Supercuts Afailed to keep those records, [the hairstylists] [were] entitled to prove their damages as a matter of >just and reasonable inference,=@ using Athe >most intelligible and probable estimate= which the nature of the case permits.@ Supercuts contends that the district court improperly shifted the burden of proof on damages to Supercuts by accepting the hairstylists= assertion that the FLSA imposed a burden on Supercuts to keep these records and that, absent the records, the hairstylists were entitled to prove their damages as a matter of Ajust and reasonable inference.@

We disagree that the district court shifted the burden of proof on damages. The court=s conclusion that the hairstylists were entitled to prove their damages using Athe most intelligible and probable estimate of damages which the nature of the case permits@ merely mirrors the standard set out in both *Gulf Coast Investment Corp.* and *Hindman* that an injured plaintiff should be allowed to recover damages if

**11**

such plaintiff produces the best evidence available. *See Gulf Coast Inv. Corp.*, 506 S.W.2d at 858; *Hindman*, 305 S.W.2d at 953. We accordingly overrule Supercuts=s fourth issue.

### Accord and Satisfaction

By its fifth issue, Supercuts argues that there is legally and factually insufficient evidence to support the district court=s rejection of Supercuts=s affirmative defense of accord and satisfaction. Supercuts contends that the parties reached accord and satisfaction because the hairstylists were compensated for their Aoff the clock@ time by being paid for their productivity and because they understood the productivity system, worked under it, and accepted their paychecks under that system.

An accord and satisfaction occurs when parties agree to the discharge of an existing obligation in a manner other than in accordance with the terms of their original agreement. *Metromarketing Servs., Inc. v. HTT Headwear, Ltd.*, 15 S.W.3d 190, 197 (Tex. App.CHouston [14th Dist.] 2000, no pet.). The Aaccord@ is the new agreement and the Asatisfaction@ is the discharge of the obligation. *Id.* To establish this defense, the evidence must show both parties agreed that the amount paid by the debtor to the creditor fully satisfied the entire claim. *Id.* In its tenth conclusion of law, the district court determined that A[t]o establish an accord and satisfaction, [Supercuts] must show that [the hairstylists=] paychecks constituted consideration for hours spent off the clock and a clear communication to the stylists that acceptance of their paycheck would constitute an accord and satisfaction with respect to the hours off the clock.@

The district court found there was no evidence that Supercuts intended the paychecks to be payment for hours spent off the clock or that the hairstylists were on notice that acceptance of the checks

would constitute an accord. We similarly can find no evidence in the record either that Supercuts intended the paychecks to compensate the stylists for time spent off the clock or that the stylists knew that acceptance of the paychecks amounted to satisfaction of their claims. Supercuts=s fifth issue is overruled.

*Waiver and Estoppel*

By its sixth issue, Supercuts argues that the evidence was legally or factually insufficient to support the district court=s rejection of Supercuts=s defense of waiver and estoppel. In support of its argument, Supercuts directs us to proof that the hairstylists did not pursue formal grievance procedures, did not ask to be paid for time spent off the clock, understood the terms of their employment, and accepted those terms along with their paychecks.

In Texas, waiver occurs when a party intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). Waiver turns on the question of intent. *Texas Workers=Compensation Ins. Facility v. Personnel Servs., Inc.*, 895 S.W.2d 889, 894 (Tex. App.C Austin 1995, no writ). There can be no waiver unless so intended by one party and so understood by the other. *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.C Texarkana 1992, writ denied). Whether waiver has occurred therefore is ordinarily a question of fact. *Tenneco*, 925 S.W.2d at 643.

Supercuts could establish waiver in the present case only if the hairstylists unequivocally and intentionally relinquished their right to be paid for time they spent off the clock. While certain hairstylists testified that they did not specifically request that Supercuts pay them for time spent off the clock before filing suit, such testimony does not conclusively establish that the stylists intended to relinquish their right to

**13**

be paid. Because waiver is a question of fact in cases where facts are not clearly established or are disputed, we defer to the district court=s failure to find the essential elements of waiver.

Supercuts similarly cannot satisfy the elements of estoppel. In order to prevail on the affirmative defense of estoppel, a party must establish five elements: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) to a party without knowledge, or the means of knowledge, of those facts; (4) with the intention that it should be acted on; and (5) the party to whom it was made must have relied or acted on it to his prejudice. *Gulbenkian v. Penn*, 252 S.W.2d 929, 932 (Tex. 1952). Supercuts failed to prove, among other things, that it was without knowledge or the means of knowing, that the hairstylists were being kept off the clock without pay. The district court therefore did not err in rejecting Supercuts=s defense of waiver and estoppel. We overrule Supercuts=s sixth issue.

### Liability for Round Rock Location

By its seventh issue, Supercuts argues that the district court erred by imposing liability against Supercuts and awarding damages for time hairstylist Julie Vargas spent off the clock at the Round Rock Supercuts location. At trial, Supercuts objected to all testimony about the Round Rock store as irrelevant. The court, however, permitted the testimony and in its thirty-first finding of fact found that

> [a]lthough both of these stores were operated in the same manner by the same upper management, the Round Rock store was owned by a different limited partnership (of which Alan Sager was also the general manager). Despite this difference in ownership, Ms. Vargas was never informed that her employer had changed, nor was she informed of a change in employer when she was transferred from Round Rock back to a Rainbow Group Store;

14

therefore, Ms. Vargas remained an employee of Defendants throughout her employment, including her time at the Round Rock store.

The question of whether a person is an employee is generally one of fact. *Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 583 (Tex. 1977). The right of control is a key factor in determining whether Vargas was an employee of Supercuts. *See Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex. 1964). For an employment relationship to exist, the right of control must extend to the means and details of accomplishment, as well as to the end result. *Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex. 1990). Examples of the types of control normally exercised by an employer include when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result. *Id*. at 278-79. It is the existence, rather than the exercise, of the right to control that determines the nature of the relationship. *Newspapers, Inc.*, 380 S.W.2d at 590.

Evidence in the record indicates that Sager was the Ahighest person in management@ at Supercuts, and that he ultimately set the policies for Supercuts. Sager testified that Supercuts=s policies included the requirement that stylists be at the store when their shift began, that stylists be given a thirty-minute lunch break and two ten-minute breaks during an eight-hour shift, and that they return to work promptly at the end of lunch periods and break times. Such testimony is an example of the type of control normally exercised by an employer. *See Thompson*, 789 S.W.2d at 278-79. The district court was also free to infer from such testimony that, regardless of actual ownership, Sager acted in a management capacity and exercised control over all Supercuts locations, including the Round Rock location.

15

We will not substitute our judgment for that of the trier of fact merely because we reach a different conclusion. *Westech Eng=g., Inc.*, 835 S.W.2d at 196. We conclude that more than a scintilla of probative evidence supports the district court=s imposition of liability on Supercuts regarding Vargas=s work while at the Round Rock location, *see Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995), and that the evidence is not so weak or contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, *see Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We accordingly overrule Supercuts=s seventh issue.

### *Attorney=s Fees*

By its eighth and final issue, Supercuts argues that there is no evidence or insufficient evidence to support the district court=s award of attorney=s fees. Supercuts argues that the district court abused its discretion in awarding attorney=s fees because (1) the hairstylists failed to meet the Apresentment@ requirement of section 38.002 of the Texas Civil Practice and Remedies Code;[2] (2) Supercuts tendered payment; (3) the hairstylists failed to segregate fees; (4) the federal court previously ruled to deny recovery for part of the fees; (5) Supercuts was entitled to offset for its fees for prevailing on the hairstylists= contract claim; and (6) the district court abused its discretion in awarding attorney=s fees because the fees are excessive in light of the amount awarded for damages.

Chapter 38 of the Texas Civil Practice and Remedies Code allows the recovery of attorney=s fees for a valid *quantum meruit* or contract claim. *See* Tex. Civ. Prac. & Rem. Code Ann. **''**

---

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. **'** 38.002(2) (West 1997).

**16**

38.001-.006 (West 1997); *Angroson, Inc. v. Independent Communications, Inc.*, 711 S.W.2d 268, 274 (Tex. App.CDallas 1986, writ ref=d n.r.e.). The district court concluded that the hairstylists were entitled to recover attorney=s fees pursuant to section 38.002, which requires a claimant to be represented by an attorney, to present the claim to the opposing party, and not have received payment for the amount owed thirty days after the claim is presented. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 38.002.

Supercuts first contends that the Apresentment@ requirement of section 38.002 was not met. *See id*. ' 38.002(2). We disagree. The record shows that by letter dated January 5, 1993, the hairstylists= counsel sent Supercuts=s counsel a breakdown of the estimated wages allegedly owed the hairstylists for uncompensated hours of work. The letter stated: APursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, my clients will seek their reasonable attorneys fees for prosecuting their claims and the claims of the proposed plaintiffs= class should the above demanded sums not be paid within 30 days.@ We hold that this letter was sufficient notice of the hairstylists= demand for payment from Supercuts for the purpose of chapter 38. *See Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981) (noting that purpose of presentment requirement is to allow person against whom it is asserted opportunity to pay claim within thirty days after they have notice of claim without incurring obligation for attorney=s fees, and that no particular form of presentment is required).

The third condition of section 38.002 requires that tender of the amount owed must not have been made within thirty days after the claim is presented. Tex. Civ. Prac. & Rem. Code Ann. ' 38.002(3). Supercuts argues that this final requirement was not met because the hairstylists failed to plead and prove that Supercuts did not tender performance. The district court found that

**17**

[r]equirement three, that payment not be tendered before the expiration of the 30th day after the claim is presented, is also satisfied. Defendants= settlement offer made in September 1994 was not timely and was subject to conditions which would preclude it from being treated as a tender of payment even if it had been timely.

As noted above, the hairstylists presented their claim by letter on January 5, 1993; Supercuts=s offer of settlement, by letter dated September 30, 1994, was made well after thirty days. Supercuts, therefore, did not timely tender payment.

Supercuts next argues that the district court erred by not requiring the hairstylists to segregate time spent on their contract claim from time spent on their *quantum meruit* claim. When a plaintiff seeks to recover attorney=s fees in a case involving multiple claims, at least one of which supports an award of fees and at least one of which does not, the plaintiff must offer evidence segregating attorney=s fees among the various claims. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10-11 (Tex. 1991). However, an exception to this duty to segregate arises when the attorney=s fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *Id*. at 11. Thus, a plaintiff must either segregate the fees among the several claims or establish that the claims are sufficiently interrelated.

Here, the district court addressed the issue of segregation of fees in both its findings of fact and conclusions of law. In its thirty-fifth finding of fact, the court stated that

Plaintiffs do not claim fees for certain hours that were exclusively related to their contract claim . . . . [T]he bulk of the hours spent on Planitiffs= contract claim also advanced their *quantum meruit* claim. Plaintiffs= contract claim arose out of the same transaction as their *quantum meruit* claim and the two claims are so interrelated that their prosecution entailed

**18**

proof of essentially the same facts. As a practical matter, segregation of the work is not possible.

The court again reiterated in its twenty-fifth conclusion of law that

> [b]ecause Plaintiffs= contract claim arose out of the same transaction as their *quantum meruit* claim and the two claims are so interrelated that their prosecution entailed proof of essentially the same facts, segregation of the time spent on the contract claim and time spent on the *quantum meruit* claim is not appropriate. Plaintiffs are entitled to attorneys fees for hours expended on their contract claim which ultimately assisted in their success on their *quantum meruit* claim.

Based upon these findings, we cannot say that the district court properly determined that the plaintiffs= claims are sufficiently interrelated so as to justify awarding them attorney=s fees covering the entire suit. Claims must be more than Arelated@; that is, the facts necessary for recovery on or defense of the claims must be the same. *See Coleman v. Rotana*, 778 S.W.2d 867, 974 (Tex. App.CDallas 1989, writ denied). Here, then, there must be some analysis of what proof was necessary to prevail upon their contract claims. Such an analysis requires a separate comparison of each cause of action with the factual basis necessary to support each claim. Unless the court determines that the same facts are necessary to prevail on or defend against the multiple claims, it cannot find that the claims are interrelated in such manner that segregation is not possible. Because the district court failed to perform this analysis, we cannot say that the evidence in the record supports the finding and conclusion that the hairstylists= contract and *quantum meruit* claims were dependent upon the same set of facts or circumstances.

We are unpersuaded by the statements of Edward Tuddenham, counsel for the hairstylists, who testified at the hearing on attorney=s fees that discovery applied to both the contract and *quantum*

**19**

*meruit* claims and that after the amendment adding the *quantum meruit* claim, there was no new discovery. Tuddenham stated that Supercuts=s defenses applied to both claims, that Aall the procedural battles as far as class certification@ applied to both claims, and that the damage evidence was exactly the same: Ayou either get it by contract or by *quantum meruit*.@ Such a position fails to recognize that recovery on an express contract and on *quantum meruit* are not necessarily consistent forms of recovery. *See Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964). Although such claims may indeed be dependent upon the same set of facts and circumstances, a court cannot simply presume that they are. *See id.* Because there is no independent analysis concerning whether the hairstylists= contract and *quantum meruit* claims arose out of the same transactions and are so interrelated that their prosecution entailed proof of essentially the same facts, we conclude that the district court erred in concluding that the causes of action were interrelated and not capable of segregation. Accordingly, we sustain this portion of Supercuts=s eighth issue and remand that portion to the district court to conduct an analysis consistent with this opinion.

Supercuts further complains that the award of $226,500 in attorney=s fees in this case is excessive because the total actual damages recovered by the hairstylists were only $28,731 in unpaid wages and $16,389 in interest. An award of attorney=s fees rests in the sound discretion of the district court, and its judgment will not be reversed absent a clear showing that it abused its discretion. *City of Austin v. Janowski*, 825 S.W.2d 786, 788 (Tex. App.CAustin 1992, no writ). One of the factors in determining the reasonableness of an award of attorney=s fees is the amount of damages awarded. *Wayland v. City of Arlington*, 711 S.W.2d 232, 233 (Tex. 1986). However, this is only one among many factors to consider.

*See Gill Sav. Ass=n v. International Supply Co.*, 759 S.W.2d 697, 703-04 (Tex. App.CDallas 1988, writ denied) (detailing twelve factors normally used in determining reasonableness of award of attorney=s fees). Because we are remanding the question of attorney=s fees, we need not decide this issue.

Supercuts also complains that because it prevailed on the hairstylists= breach of contract claim in federal district court, it is entitled to recover attorney=s fees for successfully defending against the hairstylists, or at the least, to have such fees offset any attorney=s fees awarded to the hairstylists. The record reflects that judgment was vacated and never became final.

Section 38.001 provides that a person may recover reasonable attorney=s fees in addition to the amount of a valid claim and costs if the claim is based upon an oral or written contract. Tex. Civ. Prac. & Rem. Code ' 38.001(8). Chapter 38, however, does not provide for the recovery of attorney=s fees by a defendant who only defends against a plaintiff=s claim and presents no claim of its own. *American Airlines, Inc. v. Swest, Inc.*, 707 S.W.2d 545, 547 (Tex. 1986) (holding defendant could not recover attorney=s fees under predecessor to section 38.001 when defendant presented no claim of its own). Supercuts has not demonstrated that it is entitled to recover attorney=s fees or to receive an offset. We overrule the remainder of Supercuts=s eighth issue.

As cross-appellants, the hairstylists also raise two issues on appeal. Specifically, they argue that the district court erred (1) in rejecting their breach of contract claim, and (2) in failing to state in the judgment that the hairstylists were entitled to post-judgment interest.

***Breach of Contract Claim***

By their first issue as cross-appellants, the hairstylists argue that the district court erred in rejecting their breach of contract claim. The hairstylists do not challenge any specific finding of fact or conclusion of law in arguing that the district court erred in failing to find they proved their breach of contract claim. Rather, they appeal on the basis of their position that the facts can be more appropriately viewed as a breach of contract than under the theory of *quantum meruit*. We disagree that the district court=s findings on *quantum meruit* necessarily establish all the elements of their breach of contract claim. Furthermore, the hairstylists do not identify any evidence in the record proving that the district court=s purported denial of their contract claim was either against the great weight of the evidence or conclusively established. Because the hairstylists neither adequately brief their contention, nor indicate with argument and authorities the specific error they allege the district court committed, they have waived this point of error. *See* Tex. R. App. P. 38.1(h).

### Post-Judgment Interest

By their second issue as cross-appellants, the hairstylists complain that the district court erred in failing to specify that the judgment accrues post-judgment interest. Post-judgment interest is mandated pursuant to section 304.001 of the Texas Finance Code. Tex. Fin. Code Ann. ' 304.001 (West Supp. 2002). Such interest is recoverable whether or not specifically awarded in the judgment. *Staff Indus., Inc. v. Hallmark Contracting, Inc.*, 846 S.W.2d 542, 551 (Tex. App.CCorpus Christi 1993, no writ). Because the hairstylists= petition so requested, they are entitled to post-judgment interest on the amount of damages awarded to them. We may accordingly correct or reform the judgment to reflect an award of post-judgment interest. *See id.*

**22**

The only point of contention between the parties on the issue of post-judgment interest concerns the date from which post-judgment interest should run. The hairstylists contend that interest should begin accruing May 22, 2000, the date of the original judgment. Supercuts, however, asserts that the interest should run from July 5, 2000, the date on which the district court signed an amended judgment.

The determining factor in deciding whether the effect of an amended judgment is to vacate or merely amend the prior judgment is the change made. *Home Indem. Co. v. Muncy*, 449 S.W.2d 312, 315 (Tex. Civ. App.CTyler 1969, writ ref=d n.r.e.). If the change is judicial in character, that is, if the trial court acts to correct what is deemed to be a judicial error, the prior judgment is at least in part set aside and superseded and the new and later judgment is substituted. *Id*. If, on the other hand, the amendment merely corrects a clerical error so as to accurately portray the judgment rendered in the first instance, then there is no new judgment but merely a correction of the old one to make it truly reflect what was actually done. *Id*. at 315-16. To correct such clerical errors, a court may render judgment *nunc pro tunc*. *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986). A *nunc pro tunc* judgment, although signed later, relates back to the date of the original judgment and is effective as of the earlier date. *See Home Indem. Co.*, 449 S.W.2d at 315-16.

Before judgment, the hairstylists filed a motion with the trial court requesting $20,000 in attorney=s fees in the event of appeal. The May 22 judgment awarded them $25,000. On July 5, 2000, the district court amended its judgment to correct the amount of prospective attorney=s fees to be awarded in the event of an appeal to this Court from $25,000 to $20,000. This was the only correction or change made. Supercuts attempted to cut off the hairstylists= cross-appeal as untimely by filing a motion and

**23**

additional response with this Court arguing vigorously that the July 5 judgment was rendered *nunc pro tunc* and therefore effective as of May 22. By response brief, they now argue the opposite in an attempt to delay the starting date for post-judgment interest. Considering the only alteration made to the judgment, we conclude that the district court was correcting a mistake in preparation of the original judgment and that the amended judgment therefore relates back to the original judgment. As a result, the hairstylists are entitled to post-judgment interest from the date of the original judgment, May 22, 2000.

Section 304.004 of the Finance Code provides that judgments shall earn post-judgment interest at the rate published by the Consumer Credit Commission in the Texas Register. Tex. Fin. Code Ann. ' 304.004 (West Supp. 2002). The rate published on April 18, 2000 by the Commission for judgments was ten percent for the month of May 2000. Texas Credit Letter, Vol. 19 No. 42 (April 18, 2000), 25 Tex. Reg. 4228 (2000). The judgment is accordingly reformed to provide for the accrual of post-judgment interest at the rate of ten percent from May 22, 2000.

## CONCLUSION

Having sustained the hairstylists= issue on post-judgment interest, we reform the judgment to allow the hairstylists to recover post-judgment interest. Because we have sustained a portion of Supercuts=s point of error relating to attorney=s fees, we reverse that portion of the judgment and remand to the trial court to reconsider the question of the hairstylists= attorney=s fees. We affirm the remainder of the judgment, as reformed.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Reversed and Remanded in Part; Reformed and, as Reformed, Affirmed in Part

Filed:   August 30, 2002

Do Not Publish