

# NUMBER 13-20-00025-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**FELA B. OLIVAREZ,** **Appellant,**

**v.**

**CRISTO REY GARZA, ET AL.,** **Appellees.**

---

### On appeal from the County Court at Law No. 5 of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Tijerina**
**Memorandum Opinion by Justice Tijerina**

Appellant and cross-appellee Fela B. Olivarez appeals the trial court's modification of a final judgment in a turnover proceeding awarding damages and attorney's fees to appellees and cross-appellants Cristo Rey Garza, Justino Garza, Jr., and Keith C.

Livesay.[1] By five issues, Fela asserts the trial court erred in: (1) awarding damages in Cristo's favor (a) without an underlying judgment against her and (b) without evidence to support a breach of contract claim; (2) awarding liquidated damages without hearing evidence of actual damages; (3) awarding attorney's fees without statutory or contractual authority; (4) awarding attorney's fees in the amount of $7,700 without hearing evidence to support the award; and (5) partially denying her motion for new trial.

By four issues, appellees and cross-appellants argue the trial court erred by "deleting the award for" post-judgment interest, court costs, appellate attorney's fees, and turnover relief. We affirm in part and reverse and remand in part.

## I. BACKGROUND

### A. Procedural History

In a prior cause, Cristo sued Sandra Arroyo in July 2013, alleging that property in Sandra's name belonged to him. He later filed a motion for summary judgment, and the district court granted Cristo's motion, which this Court affirmed. *See Arroyo v. Garza*, No.13-15-00211-CV, 2015 WL 9487259 (Tex. App.—Corpus Christi–Edinburg Dec. 29, 2015, no pet.) (mem. op.). Sandra then filed a bill of review in the district court seeking to set aside the judgment. Cristo again filed a motion for summary judgment, and on October 13, 2016, the district court granted summary judgment in Cristo's favor. Sandra appealed. *See Arroyo v. Garza*, No. 13-16-00633-CV, 2018 WL 3583789, at *1 (Tex. App.—Corpus Christi–Edinburg July 26, 2018, pet. denied) (mem. op.).

---

[1] We will address the parties by their first names for simplicity.

Meanwhile, Cristo filed an eviction proceeding in a justice of the peace court asking that Sandra be evicted from his property. A justice of the peace entered a judgment in Sandra's favor, which Cristo appealed to the county court on April 26, 2017. On August 10, 2017, the county court granted summary judgment in Cristo's favor requiring Sandra to vacate the premises, and Sandra appealed to this Court (2017 summary judgment). *See Arroyo v. Garza*, No. 13-17-00496-CV, 2018 WL 3583789 (Tex. App.—Corpus Christi–Edinburg Aug. 8, 2018, pet. denied) (mem. op.).

While both of Sandra's appeals were pending before us, on August 19, 2017, Sandra, as principal, signed a supersedeas bond. As a surety, Sandra's previous trial counsel, Fela "covenant[ed] that [Sandra] would prosecute her appeal with effect and pay all costs and damages which may be adjudged against her, provided the surety shall not be liable in an amount greater than $11,000, said amount being the amount of the bond herein." In her affidavit of personal surety, Fela attested to the fact that she currently held nonexempt assets that exceeded the amount of $22,000. About a year later, this Court affirmed the district court's October 13, 2016 summary judgment in Cristo's favor and dismissed Sandra's 2017 summary judgment appeal as moot. *See Arroyo*, 2018 WL 3583789, at *1.

## B. Demand for Payment

On August 15, 2018, after all appeals were exhausted, Cristo filed a forcible entry and detainer lawsuit in county court against Sandra to obtain use of his property and filed a motion to "Determine Plaintiff's Damages and Motion to Require Sureties to Deposit $11,000.00 into Registry of the Court." In the motion, Cristo averred that Fela, as surety,

3

swore under oath that she would pay all costs and damages which may be adjudged against Sandra and that the amount of $11,000 was agreed to as the proper measure of damages for rental value of the property. On October 3, 2018, the county court granted Cristo a writ of possession for the property. On October 12, 2018, the county court issued a permanent injunction enjoining Sandra from interfering with the property.

On March 19, 2019, Cristo filed a motion to modify the supersedeas bond to a cash bond. On April 26, 2019, Cristo filed a second motion for writ of possession to enforce the county court's 2017 summary judgment while Sandra filed for bankruptcy and requested an automatic stay of the proceedings. After the bankruptcy stay was lifted, the writ of possession was executed on August 16, 2019.

On August 22, 2019, Cristo filed an application for turnover relief against Fela requesting that a receiver be appointed to assist in collection of his judgment. In turn, Fela filed a third-party petition against Sandra, claiming that Sandra is responsible to satisfy the judgment.

Two months later, Cristo amended his application and requested a judgment against Fela for the bond, plus interest, and reasonable attorney's fees. Fela responded asserting the judgment had been satisfied in its entirety upon the execution of the writ of possession when a constable took possession of the property and turned it over to Cristo. Therefore, Fela requested that turnover relief be denied as the judgment was against Sandra, not Fela.

C. **Turnover Hearing**

On October 9, 2019, the county court held a hearing on Cristo's amended turnover

application. Cristo's trial counsel, Keith and Justino, appeared and testified; Fela did not appear. According to cross-appellants, Keith and Justino presented live testimony that: Fela signed the supersedeas bond and conditions for her liability on it had been satisfied; the agreed-to bond amount was to pay for the loss of rental value on the property and was less than Cristo's actual damages; the appointment of a receiver was necessary for the collection of the judgment because Fela was unwilling to satisfy her legal obligations; and attorney's fees were reasonable.[2]

## D.    Motion to Show Cause

On October 15, 2019, the county court issued a final judgment granting the amended application for turnover relief and appointing a receiver (final judgment). On October 24, 2019, the receiver filed a motion to show cause, stating that he noticed Fela for examination under oath on October 24, 2019, and Fela failed to appear. Additionally, he alleged that Fela failed to produce documents that the trial court ordered her to produce. The motion stated:

> Given [Fela] is an officer of the Court, [Fela's] conduct is even more egregious and demands firm action in which the Court insists [Fela] comply with the order and issue punitive and/or coercive measures/remedies to force compliance. [Fela] is acting as though she is above the law and does not have to comply with lawful orders and directives made in accordance with law and due process.

Four days later, the county court judge recused himself from serving on the case.[3] A third judge was appointed (third court), and he granted the receiver's motion to show cause on November 13, 2019.

---

[2] Testimony from this hearing is not included in the appellate record.

[3] A second appointed judge also voluntarily recused himself from the case.

5

**E.      Show Cause and Motion or New Trial Hearing**

On the same day, Fela filed a motion for new trial asserting she met all the requirements of the *Craddock* test. *See Craddock v. Sunshine Bus. Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). The third court held a hearing on the motion to show cause and whether it should grant the motion for new trial (SC hearing). At the SC hearing, the third court stated that the issues to be resolved were: (1) was there a bond, and what are the consequences of signing the bond under these circumstances; (2) should [Fela] be granted a new trial; and (3) if the third court denies the motion for new trial, what should it do regarding the show cause order?

Fela asserted she met all the *Craddock* factors to be granted a new trial. *See id.* at 393. She explained to the third court that she did not appear at the October 9 hearing because normally the county court does not proceed without her presence. She argued that based on that impression, her failure to appear was not the result of conscious indifference. Next, she orated that she had a meritorious defense because there was no judgment against her for the county court to have granted turnover relief or the appointment of the receiver. Lastly, she asserted that granting the new trial would not harm Cristo. *See id.*

Cristo argued that Fela did not meet the *Craddock* factors because: (1) she voluntarily chose to eat breakfast with her husband instead of appearing; therefore, her failure to appear was not an accident or mistake; and (2) the county court issued a final judgment against her because she signed the supersedeas bond as a surety, and his client was unable to profit from his property for over three years.

The third court questioned how the county court could award $11,000 of damages without any evidence before it.[4] Justino testified that in 2017, the parties agreed the bond would be set at $11,000—the fair market value for over nine acres and a house. He explained that while he argued for a higher bond amount, Fela argued for a lesser amount, and ultimately, the parties negotiated for $11,000. Therefore, this number was not in dispute at the SC hearing. Fela chose not to cross-examine Justino.

Following the parties' arguments, the third court asked if the parties were ready to proceed and present evidence if it granted a new trial "because part of filing a [motion for] new trial is saying this will not cause delay. . . ." The parties informed the third court that they were set only on the motion to show cause and not on whether to grant the new trial; consequently, they needed time to prepare for the new trial. Specifically, cross-appellants needed time to bring in their witnesses to testify, and Fela requested time to seek an attorney to represent her if a new trial was granted.

## F. Modification of Final Judgment

The third court modified the final judgment stating: "I'm just going to modify the [final judgment.] I'm going to give [cross-appellants] your $11,000 judgment and your attorney's fees. I'm going to dissolve the appointment of the receiver." *See Moritz v. Preiss*, 121 S.W.3d 715, 720 (Tex. 2003) (noting that a trial court can always "vacate, modify, correct or reform the judgment" during its plenary power). The third court prepared its own modification order titled "Order Granting Partial Motion for New Trial" wherein it vacated the final judgment, granted Cristo damages in the amount of $11,000, and

---

[4] We note that Fela did not raise this issue at the SC hearing or in her motion.

awarded attorney's fees in the amount of $7,700 to the attorneys directly (modified judgment). The third court denied all other relief. Fela appealed.

## G.     Motion for Reconsideration

Cristo and his attorneys, now newly joined as parties to the cause, filed a motion for reconsideration of the modified judgment. They asserted the third court erred in "deleting [cross-appellants'] award of post judgment interest and costs of court," and in setting aside the receivership. The third court denied the motion, and cross-appellants appealed.

## II.     DAMAGES

By her first issue, Fela argues that the third court erred when it granted Cristo damages in the amount of $11,000 because: (1) there was no judgment against her on the supersedeas bond, and (2) there was no evidence to support a breach of contract claim.

## A.     There is a Final Judgment Against Fela—the Surety

At the SC hearing, Fela offered into evidence the October 9, 2019 hearing transcript and the final judgment. The final judgment ordered that Cristo recover from Fela "the sum of $18,700, post judgment interest at the rate of 5% from the date of the judgment until satisfied, and all costs of court," "the sum of $15,000 in attorney's fees," and attorney's fees in the event of further appeals. The judgment specifically provides:

> [Fela], although having appeared in these proceedings, and being duly notified of the hearing, failed to appear, even though the [county] Court waited over an hour and a half for her [to] appear. The [county] Court took judicial notice of its file [and] judicial notice of reasonable attorney's fees. The [county] Court then proceeded to hear the evidence presented. The [county] Court finds that [Fela] signed as a surety for the supersedeas bond,

8

and that all conditions precedent for her liability on this bond have been satisfied . . . . Evidence was presented concerning the willingness of [Fela] to satisfy her obligations herein. The [county] Court finds that [Fela] will not voluntarily satisfy such obligation . . . [and] a receiver is needed to assist with compliance.

Thus, Fela specifically provided the third court with a final judgment contrary to her assertion that there was no judgment against her. As exhibit three, Fela also provided the third court with the supersedeas bond—bearing her signature—in the amount of $11,000. Therefore, we reject Fela's argument that the third court erred in awarding damages because there was no judgment against her.

## B.    Breach of Contract Claim

Regarding the lack of evidence in the breach of contract claim, by a single sentence, Fela generally asserts "the [third] court erred when it granted a judgment against Fela on the supersedeas bond *when no evidence was provided establishing [a] breach of contract.*" Other than the assertion stated above, Fela has not presented any substantive legal argument applying legal authorities to the facts of this case. *See* TEX. R. APP. P. 38.1(i). Instead, Fela merely makes this assertion without citation to authority and without explaining how that authority applies to the facts here. We are prohibited from making Fela's argument, researching the law, and then fashioning a legal argument when Fela has failed to do so. *See Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also The Tex. Brandon Corp, Inc. v. EOG Res., Inc.*, No. 04-19-00403-CV, 2020 WL 7232135, at *2 (Tex. App.—San Antonio Dec. 19, 2020, pet. denied) (mem. op.) ("We may not perform an independent review of the record and applicable law to craft these allegations into a coherent legal argument.").

9

Accordingly, we overrule her first issue.

## III.   LEGAL SUFFICIENCY

By her second issue, relying on *Baxter v. Gates of Normandie*, No. 05-03-00245-CV, 2004 WL 303594, at *1 (Tex. App.—Dallas Feb.18, 2004, no pet.) (mem. op.), Fela argues that there was no evidence of actual damages, and the evidence was legally and factually insufficient to support the award of liquidated damages. Specifically, she states that in confirming the $11,000 award in damages, the third court improperly concluded that it was not necessary for appellees to present evidence of actual damages in order to recover under the supersedeas bond. Fela relies on two unpublished cases handed down by our sister courts to support her contention that we must reverse the third court's modified judgment. *See id*; *see also Lee v. Aurora Loan Services, L.L.C.*, No. 06-08-00077-CV, 2009 WL 167067, at *4 (Tex. App.—Texarkana Jan. 27, 2009, no pet.) (mem. op.) (providing that a supersedeas bond intended to indemnify a judgment creditor from losses caused by the delay of an appeal "must be determined by proof of facts transpiring after judgment and during the pendency of the appeal").

Unpublished cases from our sister courts are not binding on this Court. *See Dowell v. Quiroz*, 462 S.W.3d 578, 585 n.6 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.) (op. on reh'g) ("[T]he decisions of sister appellate courts may be persuasive but are not binding on this Court.). Nonetheless, *Baxter* specifically concerned the non-payment of rent in a landlord-tenant dispute, and the supersedeas bond covered the tenant's unpaid rentals under the parties' lease agreement: "When, as here, the supersedeas covers such items as rentals which accrued while the case is on appeal, the damages cannot be

determined in an appellate court but must be determined by proof of facts transpiring after judgment and during the pendency of the appeal." *Baxter*, 2004 WL 303594, at *1. However, this case does not concern the non-payment of rent in a landlord-tenant dispute, and the parties are not assessing the calculation of rentals under a lease agreement as in *Baxter*. *See* TEX. PROP. CODE ANN. § 24.007 (expressly providing that in setting a supersedeas bond, the court shall take "into consideration the value of rents likely to accrue during appeal, damages which may occur as a result of the stay during appeal, and *other damages or amounts as the court may deem appropriate*") (emphasis added). Therefore, we find this authority unpersuasive.

Fela does not ask us to review the merits of the county court's supersedeas bond. *See id*. Rather, she prays that we reverse the third court's order of damages based on the lack of evidence before it. In this regard, we note that at the SC hearing, Justino testified that after ongoing negotiation, the parties had previously agreed that $11,000 would cover the fair market value of the property; therefore, the county court set the bond at this amount. Although Fela argued for a lesser amount of bond and Cristo argued for more, "after much back and forth," they "finally reached the decision that the liquidated damage would be $11,000." Fela objected: "I want to make an objection that he not say what I said in chambers . . . I don't want him to testify [to] things that happened three years ago." The third court responded, "the bond was set regardless of how it was set."

Aside from her objection, Fela did not controvert Justino's testimony with testimony of her own, cross-examine Justino, or provide any evidence to refute Justino's testimony. Conversely, the supersedeas bond in the amount of $11,000, which Fela offered into

evidence, bears her signature. The modified judgment reflects that the third court considered the "evidence on file[5] and the arguments of counsel." Because we are not reviewing the merits of the county court's supersedeas bond, we conclude that the evidence presented to the third court, including Justino's uncontroverted testimony and the supersedeas bond bearing Fela's signature, is sufficient to support damages in the amount of the county court's supersedeas bond. *See id.* (allowing the county court to set the bond in an amount as the court may deem appropriate); *McFadin v. Broadway Coffeehouse, LLC*, 539 S.W.3d 278, 285 (Tex. 2018) ("[T]he evidence presented at the [original] hearing setting the bond amount was evidence of what damages the appeal *might* cause [the creditor] if its judgment were not immediately enforced, not what damages the appeal actually *did* cause it."); *see also Hernandez v. U.S. Bank Tr. N.A. for LSF8 Master Participation Tr.,* 527 S.W.3d 307, 309 (Tex. App.—El Paso 2017, no pet.) ("A trial judge is given broad discretion in determining the amount and type of security required" and "[§] 24.007 of the Texas Property Code provides further guidance for the trial court's exercise of discretion in setting the supersedeas bond."); *Adams v. Godhania*, No. 03-20-00115-CV, 2021 WL 2604054, at * (Tex. App.—Austin June 25, 2021) ("Contrary to appellants' assertion, the trial court, in exercising that discretion, is not limited to damages . . . ."); *In re Levitas*, No. 13-10-00345-CV, 2010 WL 2968189, at *3 (Tex. App.—Corpus Christi–Edinburg July 27, 2010, orig. proceeding) (mem. op.). We overrule Fela's second issue. *See* TEX. R. APP. P. 43.5 ("When a court of appeals affirms

---

[5] This included prior motions, responses, orders, judgments, appeals, the supersedeas bond, the writ of possession, supporting affidavits, and the arguments of the parties.

the trial court judgment . . . the court of appeals must render judgment against the sureties on the appellant's supersedeas bond.").

## IV.  WAIVER

By her third issue, Fela complains that the third court "erred in awarding attorney's fees without statutory or contractual authority to do so." Cross-appellants assert that Fela waived her attorney's fees' complaints.

To present a complaint for appellate review, a party generally must have presented its complaint to the trial court by timely request, objection, or motion with sufficient specificity to make the trial court aware of the complaint. *See* TEX. R. APP. P. 33.1(a). "Complaints that attorney's fees were not recoverable either by statute or by other basis may be waived on appeal if no such objection was properly made in the trial court." *Gipson-Jelks v. Gipson*, 468 S.W.3d 600, 604 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Here, Fela did not object to the award of attorney's fees at the SC hearing or challenge the recoverability of attorney's fees in any motion following the modified judgment. Additionally, Fela does not explain that a complaint challenging the statutory or contractual basis for attorney's fees is a type of claim that cannot be waived and can be raised for the first time on appeal. *Id.* (stating that preservation of error regarding attorney's fees requires a complaint to the trial court by timely request, objection, or motion with sufficient specificity to bring awareness of complaint to the trial court); *see also Snowden v. Artesia Wells Ranch 1994, Ltd.*, No. 13-19-00157-CV, 2020 WL 2610924, at *2 (Tex. App.—Corpus Christi–Edinburg May 21, 2020, no pet.) (mem. op.) (holding that a claim about the lack of statutory authority for attorney's fees was waived

13

by the failure to appropriately object). Thus, this complaint has not been preserved for our review, and we decline to address it. We overrule Fela's third issue.

## V. ATTORNEY'S FEES

In her fourth issue, Fela complains that "the evidence was legally and factually insufficient to award [Justino] and Keith attorney's fees in the amount of $7,700."[6] Cross-appellants respond that the "[county] court's award of attorney['s] fees was premised on judicial notice"; therefore, this Court must presume the third court took such notice.

By their third issue, cross-appellants assert that the third court erred in deleting the award of appellate attorney's fees without explanation. Because both Fela and cross-appellants' issues regarding attorney's fees are interrelated, we address them together.[7]

### A. Applicable Law

In the turnover statute, "[t]he judgment creditor is entitled to recover reasonable costs, including attorney's fees." TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(e); *Feldman v. Watts*, 586 S.W.3d 591, 595 (Tex. App.—Houston [14th Dist.] 2019, no pet.). "Under section 31.002(e)'s plain text, the trial court must award a judgment creditor reasonable attorney's fees." *Feldman*, 586 S.W.3d at 595. "When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*,

---

[6] Cross-appellants respond that Fela waived this complaint. We reject cross-appellants' suggestion that Fela waived this complaint, and we address the merits. *See Gipson*, 468 S.W.3d at 604 (providing that in a bench trial, a party may raise a complaint regarding the sufficiency of the evidence to support attorney's fees for the first time on appeal).

[7] As an initial matter, we note that in its judgment, the third court improperly awarded attorney's fees directly to counsel, rather than the litigant. *See Fort Bend County v. Martin–Simon*, 177 S.W.3d 479, 486 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("A claim for attorney's fees belongs to the litigant, not to his attorney.").

14

578 S.W.3d 469, 484 (Tex. 2019); *In re Nat'l Lloyds Ins.*, 532 S.W.3d 794, 809 (Tex. 2017) (stating that a party seeking recovery of attorney's fees from the losing party "bears the burden of establishing the fees are reasonable and necessary"). Both elements are questions of fact to be determined by the fact finder and act as limits on the amount of fees that a prevailing party can shift to the non-prevailing party. *See Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 231 (Tex. 2010) (observing that generally the reasonableness of particular fees presents a fact question that the fact finder must decide, as does necessity). The fee claimant bears the burden of providing sufficient evidence to support the trial court's attorney's fee award. *Rohrmoos*, 578 S.W.3d at 498. This includes evidence of (1) the particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services.[8] *Id.*

## B. Discussion

### 1. Sufficiency

At the conclusion of the SC hearing, on its own accord, the third court vacated the final judgment and awarded attorney's fees in the amount of $7,700, stating: "I have testimony of an attorney about hours spent and time done for $7,700." However, there is

---

[8] Generally, in determining whether attorney's fees are reasonable and necessary, courts consider: (1) the time and labor required, the novelty and difficulty of the question presented, and the skill required to properly perform the legal service; (2) the likelihood that the acceptance of employment precluded other employment by the lawyer; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

no testimony about attorney's fees, hours spent, or time done included in the record for us to review. *See Rohrmoos*, 578 S.W.3d at 496 (holding that generalities such as "testimony about an attorney's experience, the total amount of fees, and the reasonableness of the fees" are "not sufficient to support a fee-shifting award under the lodestar method, which applies in fee-shifting situations"). The third court did not hold an evidentiary hearing regarding cross-appellants' request for attorney's fees, and the attorneys did not testify at the SC hearing detailing attorney's fees. Moreover, there is no invoice, bills, or any documents regarding attorney's fees in the record to support the third court's award of reasonable or necessary attorney's fees. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) ("To determine whether attorney['s] fees are reasonable, the trial court must consider the *Arthur Andersen* factors."). The only evidence before the third court to justify the modified judgment regarding attorney's fees was an affidavit wherein Keith averred that Cristo had been awarded attorney's fees in the final judgment but was now requesting additional attorney's fees because of pending litigation. The affidavit states:

> As a result of [Fela's] motion for new trial, [Cristo] was required to retain me to prepare and file a response and this affidavit. This took a great deal of time, not only to present the applicable law, but also because of [Fela's] frequent misstatements. A reasonable attorney's fee for the preparation of such response and affidavit is $4,000.

But "general, conclusory testimony devoid of any real substance will not support a fee award." *Rohrmoos*, 578 S.W.3d at 501.

With no evidence of attorney's fees before us, we are unable to justify or review the third court's award of reasonable and necessary attorney's fees. *See Rio Grande*

16

*Valley Gas Co. v. Lopez*, 907 S.W.2d 622, 625 (Tex. App.—Corpus Christi–Edinburg, 1995 no pet.) (finding that the trial court had not abused its discretion in awarding attorney's fees when the evidence consisted of testimony that the amount was reasonable and an affidavit that the amount requested was reasonable). Based on this record, we conclude that the evidence is insufficient to support the attorney's fees amount of $7,700. *See Rohrmoos*, 578 S.W.3d at 498 (providing that a fact finder's starting point in calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate). Accordingly, we sustain Fela's third issue. *See id.* at 506 (reversing this Court's judgment as to attorney's fees because the record failed to provide requisite details supporting that award and remanding the cause to trial court for a redetermination of fees).

### 2.  Appellate Attorney's Fees

By their third issue, cross-appellants allege that appellate attorney's fees are recoverable under Texas Civil Practice and Remedies Code § 38.001, "[a]nd if a trial court is required to award attorney's fees through trial, it is required to award attorney's fees on appeal." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (setting forth that reasonable attorney's fees may be awarded if the claim is for an oral or written contract). However, cross-appellants did not file a breach of contract cause of action against Fela, and they did not request attorney's fees under § 38.001(8). *Compare id.* § 31.002(e) *with id.* § 38.001(8). Therefore, cross-appellants are not entitled to appellate attorney's fees on this basis, and we reject this argument. *See Lloyds*, 532 S.W.3d at 809 ("[A] prevailing party has no inherent right to recover attorney's fees from the non-prevailing party unless

17

there is specific statutory or contractual authority allowing it.").

Nonetheless, it is well-settled that where attorney's fees are recoverable, the award may include appellate attorney's fees. *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 149 (Tex. App.—Dallas 2011, no pet.). However, an unconditional award of appellate attorney's fees is improper; the trial court must condition fees to appellee on appellant's unsuccessful appeal. *Id.*

Here, cross-appellants requested reasonable attorney's fees in their turnover application. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(e). The final judgment awarded $15,000 in attorney's fees "in the event that an appeal to the Court of Appeals is filed" plus $8,500 in attorney's fees "in the event that a petition for review is filed with the Texas Supreme Court," and $17,500 in attorney's fees "in the event that a petition for review is granted with the Texas Supreme Court" without regard to Cristo's success on appeal. Thus, the final judgment awarding prospective appellate fees was erroneous to the extent that it was not conditioned on success on appeal or a successful petition to the supreme court. *See Cessna*, 345 S.W.3d at 145; *see also Henderson v. Chrisman*, No. 05-14-01507-CV, 2016 WL 1702221, at *5 (Tex. App.—Dallas Apr. 27, 2016, no pet.) (mem. op.) (providing that the trial court could not unconditionally award prospective appellate attorney's fees to judgment creditors in a post-judgment turnover action against a debtor). Therefore, the third court did not err in omitting this relief. Accordingly, we overrule cross-appellants' third issue regarding the deletion of appellate attorney's fees.

### VI.    PARTIAL DENIAL OF MOTION FOR NEW TRIAL

By her last issue, Fela argues the trial court abused its discretion when it partially

18

denied her motion for new trial because she met all the *Craddock* factors and was entitled to a new trial as a matter of law.

## A.    Standard of Review & Applicable Law

"We review a trial court's refusal to grant a motion for new trial for abuse of discretion." *Dolgencorp of Tex. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). We determine whether the trial court acted without reference to any guiding rules and principles or whether it acted unreasonably or arbitrarily. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991). When a defaulting party moving for a new trial meets all three elements of the *Craddock* test, then a trial court abuses its discretion if it fails to grant a new trial. *Dolgencorp of Tex.,* 288 S.W.3d at 925. A default judgment should be set aside, and a new trial granted when the defaulting party establishes that (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) it has a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff. *Id.*; *see Craddock*, 133 S.W.2d 124 at 126. When as here, no findings of fact and conclusions of law are filed, the denial of motions to set aside the default judgment and for new trial must be upheld on any legal theory supported by the evidence. *See Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984).

Beginning our analysis of *Craddock*, we first determine whether Fela proved that her failure to appear at the turnover hearing on October 9, 2019, was not intentional or the result of her conscious indifference. *See Craddock*, 133 S.W.2d at 126. In making our determination, we turn to Fela's actions and knowledge. *See Lynch v. Lynch*, 540 S.W.3d 107, 121 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). The first *Craddock* element

19

is satisfied when the defaulting party's "factual assertions, if true, negate intentional or consciously indifferent conduct . . . and the factual assertions are not controverted." *Roman v. Ramirez*, 573 S.W.3d 341, 352 (Tex. App.—El Paso 2019, pet. denied) (citing *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012)).

## B.     Discussion

In her motion for new trial, Fela asserted that her failure to appear was a mistake or accident because she notified Keith she was "unexpectedly running late" as it was her birthday, and her family surprised her with breakfast. In her motion, she stated that in county court, "we have done cases at 12:00 noon or 12:30 p.m. waiting for other counsel. It is a custom of the Court to be courteous. [I] was deprived the opportunity to be heard and present [my] case against [Cristo]."

In their response, cross-appellants adamantly denied that Fela requested that they wait for her because they would have refused the request.[9] Cross-appellants asserted that Fela "maintains an attitude that courts run on her schedule" as "she appears when she wants, and not when a hearing is set." According to cross-appellants, there was nothing unexpected about her delay because she deliberately chose to have breakfast with her husband instead of complying with the trial court's order.[10] At the motion for new

---

[9] In his affidavit, Keith stated:

> First, as previously mentioned, [Fela] never told me that she was given a surprise breakfast. Second, [Fela] never told me that she was running late. Third, [Fela] never told me she would appear in court at 11:00 in the morning. Fourth, [Fela] never requested that we wait for her on the hearing; had she asked, I would have refused in light of the circumstances. Fifth, [Fela] never requested that I text her about the status of the hearing; I have never done that in the past. Sixth, [Fela] never told me that she was on her way. Seventh, I never told [Fela] that I would wait for her.

[10] Keith continued:

20

trial hearing, Fela orated to the third court, "It's my responsibility to be here, but I relied on the friendship of these lawyers . . . I told Mr. Keith . . . it's my birthday. Let's pass the case. And he said: No. Show me the money." Keith maintained his position that Fela was consciously indifferent because she voluntarily chose to eat with her husband as opposed to attend the scheduled hearing.

Here, Fela's factual assertions were controverted, and as the factfinder, the third court may have generally believed all, none, or part of her testimony. *See Lynch*, 540 S.W.3d at 122. In her brief, Fela states that she did not "demonstrate intentional or conscious indifference. Both the trial court and opposing counsel knew of her personal extenuating circumstances, knew Fela would be late to the hearing, and proceeded without her anyway." However, Fela does not direct us to legal authority that supports her position that voluntarily enjoying a leisurely breakfast in lieu of attending a court hearing is a personal extenuating circumstance, a mistake or accident, and not the result of conscious indifference.

After reviewing the record, we conclude that the third court could have reasonably determined that Fela's acts and knowledge demonstrated conscious indifference to the October 9, 2019 hearing and, as a result, did not meet the first *Craddock* element. *See Lynch*, 540 S.W.3d at 121. Accordingly, the third court did not abuse its discretion by

In all my time practicing in the Rio Grande Valley, I have never seen Fela Ol[i]varez appear in court on time, both in cases which we are opposed to each other, and in other cases in which I am merely in the courtroom, witnessing the proceedings. Her cases are called, and then the court's staff will announce to the court that [Fela] has called in and said that she is running late. Most of the local judges will usually wait for her a limited amount of time, usually no more than a half hour or forty[-]five minutes. Usually[,] she appears by then. If she fails to appear by that time, the court will proceed without her.

21

acting unreasonably or arbitrarily when it denied Fela's motion for a new trial. *Lerma*, 288 S.W.3d at 926. We overrule her last issue.

### VII.   TURNOVER RELIEF

By their third issue, cross-appellants argue the third court erred in omitting turnover relief from its modified judgment.

### A.   Applicable Law

"The Texas turnover statute provides judgment creditors with a procedural device to assist them in satisfying their judgment debts." *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.,* 540 S.W.3d 577, 581 (Tex. 2018). A turnover proceeding is "purely procedural in nature" and is limited in scope. *Kothmann v. Cook*, 113 S.W.3d 471, 475 (Tex. App.—Amarillo 2003, no pet.). To obtain relief under the turnover statute, a judgment creditor must prove: (1) the judgment debtor owns property, including present or future rights to property; (2) the property is not exempt from attachment, execution, or seizure; and (3) the property "cannot readily be attached or levied on or by ordinary legal process." TEX. CIV. PRAC. & REM CODE ANN. § 31.002; *Black v. Shor*, 443 S.W.3d 170, 176 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied). "Upon finding that the elements of [§] 31.002(a) are satisfied, a trial court has discretion to issue a range of remedies, including . . . appointing a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." *Black*, 443 S.W.3d at 175.

### B.   Discussion

Here, the original court held an evidentiary hearing on turnover relief and appointed

a receiver. The receiver subsequently filed a motion to show cause asserting that Fela failed to comply with the final judgment, did not appear for examination under oath, and refused to communicate with the receiver. After the SC hearing, the third court vacated the original court's final judgment granting turnover relief, and it dissolved the appointment of a receiver in a separate order.

At the SC hearing, Fela insisted there was no judgment against her. However, the county court issued a final judgment against Fela in the amount of $11,000 plus attorney's fees.

Regarding the appointment of the receiver, the third court stated:

I absolutely cannot understand how you get a receiver on the day that you get a judgment. I don't think that's the purpose of the Practice and Remedies Code. This is not a situation where these guys are in business together and I need to appoint a receiver to go to work on this case. And I just think it's absolutely ludicrous. I think the first thing you do is get a judgment against her, and then find out if she is going to appeal. And then after 30 days have gone by and the judgment is final and there is not an appeal, then I think it might be appropriate to begin the process of collecting the judgment. And if you can't get the judgment collected, then you say: Judge, we can't get it worked out. We need special help. That's what receivers do. I've been a receiver and it is usually a complex, difficult, complicated case. This is a money judgment that might be for either $11,000 or $17,000.

However, § 31.002 contains no such requirement; there is no thirty-day waiting period for a judgment to become final or to "find out if [the surety] is going to appeal." *See* TEX. CIV. PRAC. & REM. CODE ANN. 31.002(e) ("The court may . . . appoint a receiver with authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment."); *see also Plaza Court, Ltd. v. West*, 879 S.W.2d 271, 276 (Tex. App.—Houston [14th Dist.] 1994, no writ.)

23

(explaining that the turnover statute does not provide for notice or a hearing to be afforded a judgment debtor in a turnover proceeding). Therefore, the third court should not have eradicated turnover relief on this basis. *See Black*, 443 S.W.3d at 176 ("The only limit on a trial court's authority to enforce its judgment is that enforcement orders must not be inconsistent with the original judgment and must not constitute a "'material change in substantial adjudicated portions of the judgment.'").

The record demonstrates that Cristo was unable to enjoy his property for over three years. Fela, as the surety, refused to comply with the final judgment and the trial court's directives: she did not appear at the final judgment hearing, she did not comply with the final judgment, and she did not communicate with the receiver. Fela did not provide any testimony or evidence to refute this. Thus, we conclude that the third court abused its discretion when it eliminated the turnover relief. *See id.* at 175 ("A turnover order is proper if the conditions of the statute are met."); *see also Buller*, 806 S.W.2d at 226 ("In the context of turnover orders, it has been held that a trial court's issuance of a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for abuse of discretion if the judgment is sustainable for any reason."). We sustain cross-appellants' third issue.

## VIII.    POST-JUDGMENT INTEREST & COSTS

By their first and second issues, cross-appellants assert that the final judgment awarded post-judgment interest and costs to Cristo, but the third court refused to award the same, and "such deletion constitutes error." Fela responds that the third court did not err in vacating post-judgment interest and costs because the county court erred in

24

granting judgment on the bond in the first place.

Pursuant to the turnover statute, "[t]he judgment creditor is entitled to recover reasonable costs, including attorney's fees." TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(e). "Postjudgment interest is a creation of statute to which appellant is entitled whether or not specifically awarded in the judgment." *El Universal, Compania Periodistica Nacional, S.A. de C.V. v. Phoenician Imports*, 802 S.W.2d 799, 804 (Tex. App.—Corpus Christi–Edinburg 1990, writ denied) (citing *Cranshaw v. Swenson*, 611 S.W.2d 886, 892 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.)).

As a judgment creditor who obtained turnover relief in this case, Cristo was "entitled" to recover his reasonable costs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(e); *Ventling v. Johnson*, 466 S.W.3d 143, 149 ("Prejudgment interest and postjudgment interest compensate a judgment creditor for the lost use of money due as damages."); *Great Global Assurance Co. v. Keltex Props., Inc.*, 904 S.W.2d 771, 776 (Tex. App.—Corpus Christi–Edinburg 1995, no writ) (providing that recovery of reasonable costs and attorney's fees are mandatory for a judgment creditor who obtains turnover relief under § 31.002). Moreover, Cristo is entitled to postjudgment interest. *See El Universal, Compania Periodistica Nacional, S.A. de C.V.*, 802 S.W.2d at 804. Accordingly, we sustain cross-appellants' first and second issues as they relate to the third court's failure to award costs and post-judgment interests. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 31.002(e).

## IX. CONCLUSION

We reverse in part the judgment regarding the award of attorney's fees, turnover

25

relief, post-judgment interests, and costs pursuant to § 31.002(e) and remand for proceedings consistent with this memorandum opinion. We affirm the remainder of the judgment.

JAIME TIJERINA
Justice

Delivered and filed on the
18th day of November, 2021.